In re MARRIAGE OF CANDACE JEAN DILLEY, Petitioner-Appellee, and KENNETH DALE DILLEY, Respondent-Appellant.

Fifth District   No. 5—83—0801

Opinion filed September 18, 1984.

Stephen J. Allison, of Gollings, Allison & Gollings, P.C., of Decatur, for appellant.

No brief filed for appellee.

JUSTICE KARNS delivered the opinion of the court:

Kenneth Dale Dilley appeals from an order of the circuit court of Shelby County denying his petition for modification of a judgment of dissolution of marriage and retaining custody of the parties' two minor children in the mother, Candace Jean Dilley.

■ The absence of specific findings by the trial court makes review in the instant case most difficult. Candace has compounded the problem by failing to file an appellee's brief. While we might for this latter reason reverse, we think the minors' best interests require us to consider the case on its merits, so far as we can do so without the aid of a responsive brief. *First Capital Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

The marriage was dissolved in 1980 and custody of the minors, Bridget, then age 6, and Monyonna, then age 4, was awarded to the mother. In May 1983 the father filed the petition to modify, alleging material changes in circumstances affecting the minors' health and welfare which would require a change in custody to him. The amended petition alleged that the mother was no longer a fit and proper person to have the care, custody and control of the minors in that, *inter alia*, she allegedly used controlled substances, namely, marijuana, amphetamines and opium; she engaged in sexual inter-

course and related sex acts with numerous paramours at times when the minors were present; she allegedly cohabited with an alleged convicted child abuser; she allegedly left the minors in the care of a baby-sitter for prolonged periods strictly for her benefit to allow her to leave the home to use drugs and have sexual relations; and she allegedly allowed the minors to wander unattended and barefooted and improperly clothed outside in cold weather and rain. Additionally, the amended petition asserted that Kenneth was a fit and proper person to have the care, control, and custody of the minors in that he was remarried, had a stable home for them and did not engage in "excessive conduct such as Petitioner" which would be injurious to their welfare. Candace admitted having engaged in sexual relations with several paramours at the home and admitted cohabiting there with one of them but denied every other allegation.

A hearing on the amended petition was held in October and November 1983. Evidence adduced established that Kenneth remarried in 1980 and now resides with his wife, Crystal, and their son, age 2, in Ankeny, Iowa. Kenneth testified that when he filed the petition he was not intending to move to Iowa and decided to move only six weeks before the hearing. Crystal works as a food service assistant manager, and Kenneth was then unemployed and testified that he would look after Bridget and Monyonna if he was awarded custody. He testified that preliminary arrangements have been made in Iowa for the minors' schooling.

Kenneth produced evidence of Candace's possession, use, and one isolated sale of illicit drugs. Not all of the evidence is particularly credible, but it does tend to establish that she at one time was involved with marijuana and amphetamines (no evidence regarding opium) and their use within the home. Witnesses testified to observing marijuana plants growing in the children's bedroom and several incidents of marijuana smoking in the children's presence. Dennis Dilley, Kenneth's brother, and Jack Lennert, Candace's estranged husband, testified to observing pills and capsules in her home on different occasions. Lennert also testified that he observed devices in which marijuana could be smoked. A paper bag filled with eight smaller envelopes of pills was introduced into evidence after Candace surrendered possession of it following the first day of the hearing. She testified that it was kept in her dresser drawer and that the pills were prescribed by her doctor for her diet. Her doctor testified that he had dispensed to her several types of pills fitting the description of those in the paper bag. It was never firmly established that these pills were kept illegally. Candace testified that she no longer used marijuana or

any other controlled substance without a prescription. She said she ceased illicit usage in May 1983 and that she was currently undergoing a drug treatment program.

The mother's witnesses established that Kenneth used to grow marijuana and smoke marijuana regularly. Crystal Dilley, his current wife, testified that he smoked marijuana every day when she first married him and that she saw him smoke it in the presence of Bridget and Monyonna on occasions between 1980 and 1983. She testified, however, that his usage ceased eight months prior to the hearing.

Much of the testimony established frequent paramour visits to the mother's home while the children were in the home but nothing established that sexual activity occurred in their presence. Candace testified that she always took measures to protect the children from observing sexual acts, such as closing and locking the bedroom door when she was engaged in such activity. Her expert witness, a clinical psychologist, testified that during an interview with the children they related that the only sexual activity they ever observed was embracing and short kisses. Nothing in the record substantiates the charge that Candace left her children in the care of a convicted child abuser. Also, there was no mention of instances of neglect or inadequate provision for the children, as originally charged in the father's petition.

In fact, there was much testimony tending to establish that the children were adequately supervised, disciplined and provided for by the mother in spite of changing residence five times in three years. Bridget's teacher and Monyonna's teacher both had kind words to say about the children. Bridget was described as a very conscientious student who always has her homework done. She was described as a leader among the children in the classroom and interacts excellently with them. Monyonna was described as a very sweet little girl who tried very hard to complete her schoolwork. Both children are in special learning disability programs at their school. They testified that each child came to school appropriately attired and that each had adequate school supplies and often brought her own lunch even though they were on the free lunch program at school. The mother's minister testified that the mother brought the children to church whenever she could. Candace's babysitter testified that she looked after the children while the mother was at work and that she would take them to school and pick them up each day. Candace testified that the home is adequately furnished, that she moved so that the children could have a home of their own and so the children could attend a special school for their learning disabilities, and that she changed jobs so that she could spend more time with them. Jack Lennert testified that his es-

tranged wife's current home is neat and clean.

Dr. Jerry L. Boyd, a clinical pyschologist, testified on behalf of the mother. He observed Candace and the children in his office, where he conducted diagnostic interviews and administered projective and objective psychological tests. He testified that Candace is very family-oriented and has a strong sense of her role as a mother. He testified that she has a strong sense of attachment in caring for her children and that she takes those responsibilities most seriously and tries to be the best mother she can be. He described a favorable history of child management and concern for environment, discipline and parental responsibility as a role model. He noted that the children were well behaved and mannered. Dr. Boyd testified that he observed no outward signs of debilitating substance abuse. In his opinion Candace is a fit parent. Dr. Boyd was not significantly impeached on these matters but did admit that the children could be adversely affected by observing their mother's role as a promiscuous person even if they never actually observed sexual activity.

The trial court found that Kenneth failed to prove by clear and convincing evidence that the best interests of the minors required removal of the mother as custodian and found that their best interests would not be served by modifying custody in favor of him or anyone else. The court found that "this is not a situation where the Court may say that the petition fails and case is closed." "I believe instead this is a case where the Court would be remiss if there was not some form of judicial supervision invoked. ***[W]hat I am going to do is direct that the Department of Children and Family Services investigate this matter and provide the Court with a report over the next several months of the present ability of the mother *** to provide for the safe physical and emotional environment of the children. *** Upon the receipt of that report, I will then determine whether or not the further supervision is required or whether or not supervision should be terminated."

█ Kenneth has alleged three errors. We find that only one of them deserves consideration: whether the judgment is against the manifest weight of the evidence. His alleged error regarding the court's sustaining objections to Candace's and Grace Anderson's assertion of the privilege against self-incrimination in refusing to testify to whether each observed the other using drugs has no merit. Even if it were error, such testimony would have been cumulative and of no substantial import. Kenneth's alleged error regarding the court's refusal to allow certain evidence regarding Candace's treatment at a drug counseling center is similarly without merit. The record indicates

that the reason such evidence was offered would have provided nothing more than what was elicited from Candace herself. The court exercised its discretion in accordance with section 10 of the Mental Health and Development Disabilities Confidentiality Act (Ill. Rev. Stat. 1983, ch. 91½, par. 810), and we cannot say that this discretion was abused.

Kenneth relies solely on *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421. He also makes a passing reference to *Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300, by way of quoting a passage from *Jarrett* wherein the supreme court cited the holding in *Nye* that past moral indiscretions of a parent are not sufficient grounds for denying custody if the parent's conduct establishes the improbability of such lapses in the future. The supreme court in *Jarrett* stated, "This rule focuses the trial court's attention on the moral values which the parent is actually demonstrating to the children." (*Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 347, 400 N.E.2d 421, 424.) We are unsure whether he cites this as a proposition to support his case or to discredit the mother's. Presumably, though it is not argued, Kenneth would have us assume that Candace's sexual indiscretions have persisted to the date of the hearing and will thereafter continue. Presumably, he would also have us believe that his illicit drug use has ceased.

Specifically, he argues that her past sexual promiscuity with as many as 11 paramours and her past cohabitation with an indefinitely described number of them, but at least one, "if not presently having been aware to the children, would have been inferred or relayed to the children in some other manner through statements of the mother or persons living with the mother from time to time." We take this to mean that the children are allegedly adversely affected by exposure to the repeated visits of the several paramours. Kenneth contends that a comparison of the instant case to *Jarrett* overwhelmingly indicates that the trial court made its decision against the manifest weight of the evidence.

Section 610 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 610) is applicable to petitions for modification of custody. "[T]he court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, *** and that the modification is necessary to serve the best interest of the child." The record before us establishes clearly and convincingly that a change has occurred in the circumstances of the

custodial parent which would permit modification. The mother's immoral and illegal activities are not only inimical to her good health, but they also bespeak of an atmosphere in the home conducive to the potential harmful effects to the children that should be avoided, as the court in *Jarrett* found. (*Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 349, 400 N.E.2d 421, 425.) The children may indeed be affected adversely by exposure to this type of environment in spite of the otherwise adequate parenting exhibited by the mother. It is not difficult to imagine past and future harm to the children whose role model, teacher, and disciplinarian is openly and notoriously engaging in such activities with apparent impunity.

With this said, we remain uncertain about the children's best interests. While there is ample evidence of a change in circumstances that would permit modification, we are not clearly convinced that the evidence establishes that a modification awarding custody to the father is necessary to serve those best interests. The psychologist's testimony is entitled to great weight. We think it is also significant that there is no adverse evidence regarding the health, welfare and safety of the children while in the current care and custody of their mother. They seem to be well provided for. They are enrolled in special schools. They are taken to church. They have a babysitter watch them when the mother is not there. The home is neat and clean. In short, there is nothing in this record suggesting that Candace is not otherwise a good mother and fit parent.

On the other hand, the only evidence regarding the father's fitness is essentially that he lives in Iowa with his wife and baby. We have no idea what has happened since November 1983: whether he is now employed, whether they acquired suitable housing, whether preparations have been made for the children's special education needs, whether, in general, it would be in the children's best interests for the father to have custody. Because the mother may be characterized as perhaps not the best person to have custody does not necessarily mean that the father is. Indeed, counsel at oral argument conceded that neither parent might be a better custodian than the other, noting that home studies by the Department of Children and Family Services have not been completed.

■ We cannot on this record hold that the best interests of the children would necessarily be served by allowing them to go to live with their father in Iowa. In this regard, we think the trial court did not err in denying, without prejudice, the petition. The trial court concluded that this is not an open-and-shut case. We agree. Home studies should be made for both the current household and the proposed

household.

In accordance with the views expressed herein, the judgment of the circuit court of Shelby County denying the petition for modification of custody is affirmed. The cause is remanded for proceedings consistent herewith.

Affirmed and remanded.

WELCH, P.J., and HARRISON, J., concur.