*In re* MARRIAGE OF DIANE OEHM, n/k/a Diane Roisland, Petitioner-Appellant, and GREGORY OEHM, Respondent-Appellee.

First District (1st Division)   No. 1—92—1495

Opinion filed June 14, 1993.—Rehearing denied October 13, 1993.

Fisher & DiMonte, of Chicago (Ward Fisher and Linda J. Kroning, of counsel), for appellant.

Feinberg & Barry, P.C., of Chicago (Carroll A. Barry, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This action arises from respondent's, Gregory Oehm's, emergency petition for temporary custody or possession of his two

adopted daughters. On April 9, 1992, the circuit court ordered that the temporary residence of the children be with respondent. Petitioner Diane Oehm Roisland appeals that order. We affirm.

The marriage of petitioner and respondent was dissolved on June 18, 1990, when a judgment for dissolution of marriage was rendered in the superior court of California. The settlement agreement resolving the issue of custody of their two children was entered on March 15, 1991. The settlement agreement awarded petitioner and respondent joint legal custody of the parties' two adopted daughters, Alicia, born on March 25, 1979, and Katherine, born on March 26, 1981. Petitioner was awarded physical custody of the children and respondent was given certain visitation rights.

In the summer of 1989, petitioner and the children moved to Illinois. Petitioner failed to inform respondent of the move. When respondent discovered that petitioner had moved with the children, he also moved to Illinois.

On December 26, 1991, the children visited respondent and his current wife. On that date, the girls informed him that they did not want to return to their mother, petitioner. The children were emotionally distraught. Respondent telephoned petitioner and requested more time with the children in order to calm them down. Petitioner refused the request, called the Rolling Meadows police department and reported that respondent was refusing to return the children. After speaking with a commander of the Rolling Meadows police department, respondent brought the children to the police station. Then, the police placed the children with petitioner's parents overnight.

On January 6, 1992, respondent filed an emergency petition seeking, *inter alia*, that the children temporarily reside with him. The following day, after conducting a conference with the petitioner's and respondent's attorneys, the circuit court sent the parties and the children to emergency intervention in order to help determine temporary residency. At 2 p.m. on January 7, Bianca Rodriguez, who conducted the emergency intervention, made the following recommendations to the circuit court:

(1) that respondent have temporary custody of the children;

(2) that the petitioner and the children continue in counseling to work out their problems;

(3) that petitioner have alternate weekend visitation;

(4) that the children remain in the same school district until the end of the school year; and

(5) that the parties go to mediation to discuss long-term custody issues.

Rodriguez stated that she arrived at her recommendations based on her interviews with petitioner, respondent and the children. She further testified that Alicia stated that she preferred to stay with respondent because her relationship with her mother was poor. Katherine also expressed a desire to stay with respondent because she was close to neither petitioner nor her new husband. Additionally, Rodriguez testified that over the course of her interviews she developed a belief that the children were more emotionally bonded with respondent and that it would be better if they stayed with him temporarily. In response to the circuit court's questions of whether her recommendations were based upon the best interest of the children and whether their current residence with petitioner constituted a jeopardy to them, Rodriguez answered in the affirmative.

After the above testimony, petitioner's counsel requested additional time to question Rodriguez. The circuit court granted this request and set the matter for January 10. The circuit court, however, expressed that its concern at that time was the immediate whereabouts of the children. After hearing Rodriguez's testimony, the circuit court found that, according to the intervenor, there was reason to believe that the children were in a situation which "constitutes a danger or a jeopardy to them either physically, emotionally, psychologically or mentally" and that, therefore, "it is in the best interest of the minor children to remove them temporarily." Thus, the circuit court ordered that the children temporarily reside with respondent for the three days between the court dates.

On January 10, 1992, petitioner's counsel moved for a change of venue. Judge Kathy Flanagan granted the change of venue motion, ruled that all of the current orders would remain in full force and effect and that the matter be transferred to the presiding judge for reassignment. Thus, according to the current orders, the children were to continue to temporarily reside with respondent.

The matter was reassigned to Judge Susan Snow. On January 21, 1992, petitioner filed an emergency petition for rule to show cause and return of the minor children. On that date, the circuit court entered an agreed order, allowing the children to be returned to petitioner after school on January 23, 1992, and respondent be extended visitation from 10 a.m. on January 26, until February 6, 1992, at 4 p.m. The matter was set for a hearing on February 6, 1992, on petitioner's petition for rule to show cause. The hearing did not take place on February 6, and it is unclear from the record

as to the reason for the delay. On February 13, petitioner filed an emergency amended petition for rule to show cause or in the alternative for return of the minor children and a motion to strike and dismiss the petition for change of custody pursuant to section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 610(a) (now 750 ILCS 5/610(a) (West 1992))).

The matter was reassigned to Judge James Klein. On March 6, 1992, respondent filed an amended petition for change of custody pursuant to section 610(a). The circuit court denied petitioner's motion to strike respondent's emergency petition for temporary order of custody on March 11 and set the hearing on the issue of temporary custody for March 19, 1992.

The circuit court held a three-day hearing beginning on March 19, 1992, regarding respondent's emergency petition for temporary order of custody and petitioner's emergency amended petition for rule to show cause or in the alternative for return of the minor children. At the onset of the hearing, petitioner's counsel explained to the circuit court that respondent, "having proceeded under [section] 610 [of the Act,] that the standards of endangerment as well as the standards of proof being clear and convincing should apply with reference to the testimony taken here today." The circuit court agreed by responding that it "will decide if [it] think[s] [the children] are in endangerment."

At the hearing, petitioner testified that the children had been in her physical custody from their adoption through January 7, 1992. She testified that Alicia has a behavior disorder and is difficult to discipline. Petitioner has, in the past, washed Alicia's mouth out with soap and slapped her face. At the time of the hearing, Alicia was in a behavior disorder classroom at her school and had a social worker assigned to her. Petitioner further testified that Katherine has a learning disability and, therefore, was in a learning disability classroom at school.

Susan Picard, a clinical social worker at the Jewish Children's Bureau, had conducted therapy sessions with petitioner and the children from December 1989 through 1991. Picard testified that petitioner was an excellent parent, that progress on Alicia's behavior fluctuated throughout the duration of her counseling, but that Katherine was making progress.

Peggy Gillespie, a clinical social worker who evaluated the children in early 1992, also testified on behalf of petitioner. She testified that in her opinion, the children should reside with petitioner

because there was risk of endangerment to the children in the situation at respondent's home. She found no risk of endangerment to the children while they had been in petitioner's custody. Gillespie also testified that Katherine was experiencing severe separation anxiety since being separated from petitioner and had become more angry, more depressed and had regressed emotionally while in respondent's care from January to March 1992. Gillespie admitted that she had never spoken to respondent, was friends with petitioner's counsel and had listened to a tape recording which was not allowed into evidence.

Next, Elaine Oehm, respondent's current wife, testified that Alicia was a difficult child who talks back, has flooded the basement and attempted to nail herself into the bedroom. Elaine also testified that when Katherine originally began staying with her and respondent, she was having nightmares and wetting the bed, neither of which was occurring at the time of her testimony. Further, Katherine was, at the time of the hearing, on the honor roll at school. Elaine stated that she is willing to take both girls into her home.

Rodriguez also testified at the three-day hearing. Rodriguez interviewed Alicia, who explained that petitioner disciplined her by slapping her in the face, washing her mouth out with soap and sending her to her room. Respondent, however, rarely used any type of physical discipline. Alicia confided in Rodriguez that she had a good relationship with respondent and had wanted to live with him since the separation of respondent and petitioner. Alicia further revealed that she had a very good relationship with respondent's current wife. Alicia also told Rodriguez that she was not close to petitioner and felt that petitioner had lied to her about coming to Chicago from California. According to Alicia, petitioner told her that respondent had abandoned her and her sister and did not want to have any contact with her. Additionally, Alicia did not have a very good relationship with petitioner's husband because he was mean to her, would make negative comments about respondent and would not allow her to talk to respondent on the telephone. Alicia further explained that she wished to live with respondent because he made her feel good, confident and was supportive of her, while petitioner often times called her stupid and told her that she was inept at doing things.

Additionally, Rodriguez testified that she spoke with Katherine. Katherine told her that she was not very close to petitioner, that petitioner makes her upset and that she feels neglected by her since

she remarried. Katherine explained that petitioner told her that her current husband would always come first. Petitioner would not respond to Katherine's questions if her current husband was present, but instead would respond and be attentive only to him. Katherine does not have a good relationship with petitioner's husband because he is mean to her. Rodriguez further testified that Katherine expressed that she feels closer to respondent, has a good relationship with respondent's wife and wants to live with them.

Mrs. Fields, the children's counsel, recommended that they be placed in the temporary custody of respondent. Fields stated that Alicia informed her that "if she returns to her mother she would prefer to be in a foster home where she would be running away."

On April 2, 1992, at the close of the three-day hearing, the circuit court found that it was in the best interest of the children to remain in the temporary custody of respondent. On April 9, the circuit court entered an order granting such temporary residency. Petitioner appeals that order.

First, petitioner argues that the circuit court erred in refusing to apply the standards set forth in section 610(a) of the Act. (Ill. Rev. Stat. 1991, ch. 40, par. 610(a) (now 750 ILCS 5/610(a) (West 1992)).) Section 610(a) states:

"Unless by stipulation of the parties, no motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously, his physical, mental, moral or emotional health." Ill. Rev. Stat. 1991, ch. 40, par. 610(a) (now 750 ILCS 5/610(a) (West 1992)).

Respondent, however, contends that the correct governing section of the Act is section 501(a)(3). (Ill. Rev. Stat. 1991, ch. 40, par. 501(a)(3) (now 750 ILCS 5/501(a)(3) (West 1992)).) In pertinent part, section 501 of the Act states:

"§501. Temporary Relief. In all proceedings under this Act, temporary relief shall be as follows:

(a) Either party may move for:

* * *

(3) other appropriate temporary relief." (Ill. Rev. Stat. 1991, ch. 40, par. 501(a)(3) (now 750 ILCS 5/501(a)(3) (West 1992)).)

Section 603(a) of the Act governs temporary orders and states:

"A party to a custody proceeding may move for a temporary custody order. The court may award temporary custody

under the standards of Section 602 ***." (Ill. Rev. Stat. 1991, ch. 40, par. 603(a) (now 750 ILCS 5/603(a) (West 1992)).)

Section 602 of the Act requires that the court "determine custody in accordance with the best interest of the child." Ill. Rev. Stat. 1991, ch. 40, par. 602(a) (now 750 ILCS 5/602(a) (West 1992)).

■ In the instant case, petitioner and respondent already have a settlement agreement entered on March 15, 1991, granting them joint custody of the children. Thus, the petition for change of custody is a modification of the existing custody order. Citing *People ex rel. Bukovic v. Smith* (1981), 98 Ill. App. 3d 144, 423 N.E.2d 1302, the Historical and Practice Notes for section 610 state:

"Once the initial custody determination has been made, a subsequent petition for custody, regardless of whether it is by a party or a non-party to the initial proceeding, constitutes a petition for modification of custody and not a new custody proceeding. [Citation.] Accordingly, the court must decide the petition under the more stringent standards of section 610 for modification of child custody judgments, rather than under the standards of section 602 for initial custody determinations. See *In re Marriage of Spangler* [(1984), 124 Ill. App. 3d 1023, 464 N.E.2d 1120]." (Ill. Ann. Stat., ch. 40, par. 609, Supplement to Historical & Practice Notes (Smith-Hurd, Supp. 1992).)

Even though the relief requested by respondent is "temporary," such relief is a modification of an existing custody judgment which is not more than two years old. The appellate court has held that an award to a husband of temporary custody of a child for six months, at which time custody was to be reviewed, was an improper attempt to circumvent the requirements of section 610, which generally prohibits the modification of custody awards for two years. (*In re Marriage of Cesaretti* (1990), 203 Ill. App. 3d 347, 561 N.E.2d 306.) We, therefore, find that in the instant case, section 610(a) of the Act is the governing statute.

■ Petitioner argues that the circuit court did not apply the serious endangerment standard of section 610. We disagree. On January 7, 1992, Judge Flanagan found that there was "a danger or a jeopardy to [the children] either physically, emotionally, psychologically or mentally" if they were to continue to reside with petitioner. Thus, Judge Flanagan clearly "permitted" respondent's motion to modify the custody judgment because she had "reason to believe" that the children's environment, when in the custody of petitioner,

was a serious endangerment to them physically, emotionally, psychologically or mentally. (See Ill. Rev. Stat. 1991, ch. 40, par. 610(a) (now 750 ILCS 5/610(a) (West 1992)).) There were affidavits on file from both petitioner and respondent in addition to Rodriguez's, the emergency intervenor's, testimony. After Judge Flanagan "permitted" the motion to modify the custody judgment based on the finding that there was reason to believe that the children's present environment would endanger them, the circuit court was then entitled to conduct a hearing on the requested modification to determine what would be in the best interest of the children. (See Ill. Rev. Stat. 1991, ch. 40, par. 610 (now 750 ILCS 5/610 (West 1992)).) Thus, the "serious endangerment" standard of section 610 was applied and the circuit court properly proceeded to a hearing on the requested modification.

■■ Next, petitioner argues that the circuit court erred in not applying the clear and convincing evidence standard of section 610(b). In pertinent part, section 610(b) states that the court

"shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment *** that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child." (Ill. Rev. Stat. 1991, ch. 40, par. 610(b) (now 750 ILCS 5/610(b) (West 1992)).)

Petitioner specifically argues that respondent failed to establish endangerment by clear and convincing evidence. According to the statute, the circuit court must find clear and convincing evidence that a change has occurred and a modification of the custody arrangement is in the best interest of the children. Both elements must be met. (*In re Marriage of Dilley* (1984), 127 Ill. App. 3d 992, 469 N.E.2d 674.) The statute, however, does not require that the circuit court find endangerment by clear and convincing evidence. The statute requires that there must be "reason to believe" that the child's present environment may endanger him in some way. (Ill. Rev. Stat. 1989, ch. 40, par. 610(a).) As discussed earlier, there was a finding by Judge Flanagan that there was reason to believe that the children's environment was endangering them in some way. Therefore, the next prong of section 610 requires the circuit court to find by clear and convincing evidence that a change has occurred

since the entering of the custody award and that a modification of the award is in the best interest of the children.

A circuit court's disposition in proceedings on petitions for change of custody will not be interfered with on review unless it is against the manifest weight of the evidence. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 435 N.E.2d 1361.) There is evidence in the record that both children want to reside with respondent, that respondent makes them feel good about themselves, that they enjoy and trust respondent's current wife and that she is willing to take the children into her home. Furthermore, there is evidence that the children do not feel close to petitioner and feel that petitioner's husband is cruel to them. Moreover, there is evidence that Alicia would rather stay in foster care than live with petitioner and that petitioner lied to the children about the move to Chicago and the respondent's alleged abandonment of them. Additionally, there is evidence that Katherine feels neglected by petitioner because of the attention petitioner gives to her current husband and her statement that her husband will always come first. Katherine also no longer wets the bed or has nightmares since residing with respondent and is on the honor roll. Most of this evidence is testimony from an unbiased witness, Rodriguez, the court-appointed emergency intervenor.

There is clear and convincing evidence that changes have taken place since the initial custody award was entered, such as petitioner's remarriage, the girls' discovering that respondent did not abandon them and that the girls prefer to reside with respondent. Accordingly, we hold that the circuit court's finding that it was in the best interest of the children to modify the custody arrangement temporarily because of the changes in circumstances was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.