Robert A. HITCHCOX, Appellant–
Respondent,

v.

Nancy Young HITCHCOX,
Appellee–Petitioner.

No. 53A05–9706–CV–236.

Court of Appeals of Indiana.

April 9, 1998.

Paul J. Watts, Spencer, Karen A. Wyle, Bloomington, for Appellant-Respondent.

Ira B. Zinman, Bloomington, for Appellee-Petitioner.

**OPINION**

KIRSCH, Judge.

Robert Hitchcox (Bob) appeals the trial court's judgment dissolving his marriage to Nancy Young Hitchcox (Nancy). The appeal presents four issues:

I. Whether the trial court erred by ordering Bob to repay certain debts to Nancy.

II. Whether the trial court erred by allocating nearly all of the marital assets to Nancy.

III. Whether the trial court violated federal bankruptcy law by ordering Bob to repay certain debts to Nancy.

IV. Whether the trial court abused its discretion in its discovery rulings.

We affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY

Bob and Nancy married in 1990 and separated in 1994. Their marital gross assets consisted primarily of business property that Nancy brought into the marriage, valued at approximately $1,200,000. The marital liabilities totaled approximately $670,000, attributable primarily to loans on the business property. The trial court allocated all of the business property to Nancy and assigned to her all of the debts on that property. The court allocated no property to Bob other than one-half of the equity in the marital residence, from which the court required Bob to pay all tax liens on the residence. Given the tax liens, the equity in the residence had a zero net value for Bob.

The court also ordered Bob to pay Nancy $63,341.91, apparently to repay four debts Nancy had paid or would pay on his behalf: (1) $23,114 to American Express; (2)

$6,227.91 to Chase Visa; (3) $16,000 to BancOne for Loan No. 4243126564; and (4) $18,000 to BancOne for Loan No. 00126126016.

While the divorce proceedings were pending, Bob filed for individual bankruptcy. The bankruptcy court discharged certain debts Bob owed to Nancy or Nancy's businesses. There is no evidence, however, that the bankruptcy court discharged the four debts referenced above (American Express, Chase Visa and two BancOne loans).

## STANDARD OF REVIEW

█ Our standard of review is deferential; we cannot reweigh the evidence. *Euler v. Euler,* 537 N.E.2d 554, 556 (Ind.Ct.App. 1989). We consider only the evidence favorable to the trial court's decision. *Fields v. Fields,* 625 N.E.2d 1266, 1267 (Ind.Ct.App. 1994), *trans. denied.* We must affirm the decision unless it is against the logic of the evidence. *Nill v. Nill,* 584 N.E.2d 602, 603–04 (Ind.Ct.App.1992), *trans. denied.* If, however, the trial court's judgment is erroneous as a matter of law, we must reverse. *See Blue v. Blue,* 139 Ind.App. 645, 647, 218 N.E.2d 370, 371 (1966).

## DISCUSSION AND DECISION

### I. The Trial Court Erred by Ordering Bob to Repay Certain Satisfied Debts

Bob contends that the trial court erred when it ordered him to pay Nancy $63,341.91. According to Bob, the order represents the trial court's erroneous view that Bob should reimburse Nancy for payments she made on debts during the marriage. Bob argues that the debts should not have been included in the property division calculation, because they were fully paid during the marriage.

In response, Nancy maintains that the order is merely an allocation of marital debts. She argues that the debts arose from Bob's business activities and are still part of the marital liabilities. As such, Nancy contends, the trial court was within its discretion in allocating those liabilities to Bob.

█ Nancy's contention is incorrect with regard to three debts satisfied during the marriage. Money used to satisfy marital debts prior to dissolution is not marital property subject to division. *Quillen v. Quillen,* 671 N.E.2d 98, 100 (Ind.1996) (supreme court incorporating portion of opinion from *Quillen v. Quillen,* 659 N.E.2d 566, 574 (Ind.Ct.App. 1995)); *see also Waitt v. Waitt,* 172 Ind.App. 357, 368, 360 N.E.2d 268, 275 (1977). Here, the Record demonstrates that the two BancOne debts and the American Express debt were satisfied while the marriage was intact. *Record* at 178 (Nancy paid several of Bob's loans and expenses); 188–89 ($23,114 paid to American Express as of July, 1992 (prior to separation)); 191 ($16,000 paid to BancOne as of August, 1992 (prior to separation)); 192, 195, 265 ($18,000 paid to BancOne).[1] Given that these debts were paid prior to separation, the trial court erred by ordering Bob to repay them.

Nancy argues that the payments at issue were plainly loans she made to Bob's business, and that Bob should be bound to repay those loans. This argument is inconsistent with the legislative definition of marital property. According to the legislature, marital property includes all property of the parties, whether acquired by joint or individual efforts. I.C. 31–15–7–4, formerly I.C. 31–1–11.5–11(b).[2] Bob's business was marital property, not Bob's property, and Nancy's loans to the business were marital liabilities, not Bob's liabilities. Had Bob's business

---

**1.** The relevant BancOne loan document indicates that this debt was paid in full in September, 1994, two months after Bob and Nancy separated. *Record* at 192. The Record contains no evidence concerning the actual dates that payments were made on the debt. Nancy's summary exhibits, however, indicate that the entire amount was paid prior to separation. *Record* at 195, 265. Accordingly, there is no evidence that the debt was outstanding at the time the parties separated.

**2.** After the trial court entered judgment, a recodification of the Family Law statutes took effect. The recodification has no effect on proceedings like this one that began prior to the effective date. IC 31–10–1–3 (1997 supp.). Recodification citations are included here for ease of reference.

prospered, Nancy would be entitled to have the entire value of the business included in the marital pot, independent of the amount she had individually contributed to the business. She cannot now recoup her individual contribution merely because the business was unprofitable. *Cf. Planert v. Planert,* 478 N.E.2d 1251, 1254 (Ind.Ct.App.1985) (trial court assigned to husband debts that were **still outstanding**).

■ Given that there were no grounds for ordering Bob to repay the three debts that had already been satisfied, we reverse the trial court's order with regard to the amount attributable to those debts ($57,114).[3] As to the fourth debt, $6,227.91 payable to Chase Visa, the Record indicates that the debt remained outstanding at the time the parties separated. *Record* at 190, 195.[4] Accordingly, the debt was properly part of the marital estate and, as discussed below, the trial court was within its discretion in allocating that debt to Bob.

## II. The Unequal Property Division Was Not Erroneous

Acknowledging that Nancy brought significant family assets into the marriage, Bob concedes that the trial court was justified in dividing property unequally. He challenges, however, the degree of the inequality. He contends that he is entitled to one-half of the amount Nancy's business assets appreciated during marriage. Nancy counters that the evidence on the relevant statutory factors support the trial court's decision to award all of the assets to her.

The controlling statute states that the presumption of an equal division may be rebutted by evidence of:

"(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective ...

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

I.C. 31–15–7–5, formerly I.C. 31–1–11.5–11(c).

■ To apply these factors, the trial court employs a two-step analysis. First, the court must determine whether a departure from an equal division is warranted. Second, if an unequal division is warranted, the trial court must apply the statutory factors to calculate a just and reasonable division. *Cowden v. Cowden,* 661 N.E.2d 894, 896 (Ind.Ct.App. 1996).

■ Here, the trial court found that the evidence on the statutory factors warranted an unequal property division. The court further found that Nancy was entitled to all of the equity in the marital property based on the extent she supported both parties during the marriage. Having reviewed the Record, we find no error in the trial court's decision. There is substantial evidence that Nancy acquired nearly all of the marital assets prior to the marriage, that her financial contributions to the maintenance of those assets exceeded Bob's contributions, that some marital assets were disposed of in Bob's unprofitable business, and that Bob now has some earning ability. Accordingly, the trial court's allocation of marital assets was consistent with the applicable statutory factors. We cannot reweigh the evidence merely to devise a different allocation.

## III. The Trial Court Did Not Violate Federal Bankruptcy Law

The trial court listed in the marital balance sheet a $48,035 debt to Virgo Properties, and assigned that liability to Nancy. Bob con-

---

**3.** $23,114 + $16,000 + $18,000 = $57,114.

**4.** Although the evidence indicated that the total Visa bill was $10,462.91, only $6,227.91 re-

mained outstanding. The trial court properly excluded the satisfied amount from the marital pot.

tends that the trial court erred by including the debt in the marital pot. He claims that inclusion of the debt in the marital pot violates bankruptcy law because the federal bankruptcy court discharged the debt. Bob maintains that Nancy will not have to repay the debt, and that as such the cash judgment for Nancy should be reduced by $48,000.

Nancy responds that although the bankruptcy court discharged Bob's liability to Virgo, she remains liable to Virgo on a promissory note. The note represents funds Nancy borrowed from Virgo and from Hyde Park Corporation. The Record indicates, and the trial court apparently concluded, that Nancy borrowed the funds in order to loan those funds to Bob. Nancy argues that Bob's discharge in bankruptcy did not discharge her liability to Virgo on the note. As such, she concludes, the Virgo loan was properly included among the marital liabilities.

■ Nancy's position is correct. The inclusion of the debt in the marital pot does not disrupt Bob's discharge in bankruptcy, because inclusion in the marital pot does not resurrect Bob's liability on the debt. The trial court found that Nancy remains liable for the debt, and Bob cited no persuasive evidence to the contrary. Given that Nancy remains liable, the debt was properly included in the marital pot.

## IV. The Trial Court's Discovery Rulings Were Within Its Discretion

Bob claims the trial court erred in denying his motion to compel production of documents and in failing to require Nancy's accountant to answer certain deposition questions. In the motion to compel, Bob sought tax returns and detailed accounting information concerning businesses Nancy owned with her father and brother. Regarding the deposition, Bob sought answers from Nancy's accountant concerning the value of those businesses. According to Bob, he needed the

discovery to challenge Nancy's appraisals of the businesses.

Nancy maintains that Bob failed to adhere to the procedural requirements of Ind. Trial Rules 26 and 37. Further, Nancy claims that the information available to Bob was sufficient to allow him to appraise the businesses at issue.

■ We need not address the parties' procedural arguments because we find no abuse of discretion in the trial court's discovery rulings. Management of discovery is a litigation function particularly within the trial court's domain. A trial court may reject a party's request for additional discovery if the party has had ample time to obtain the requested information. *See Coster v. Coster*, 452 N.E.2d 397, 401 (Ind.Ct.App.1983). On appeal the trial court's discovery rulings are presumed to be correct, and cannot be reversed unless the rulings are clearly against the logic and effect of the facts known to the trial court. *Breeden v. Breeden*, 678 N.E.2d 423, 426 (Ind.Ct.App.1997).

■ Here, Bob had substantial time to request and obtain the information he sought. He served his Request for Production in July, 1995.[5] Nancy served responses in November, 1995. In December, 1995, Bob indicated that he would need additional information concerning Nancy's assets unless the parties settled. *Record* at 88. Nancy responded in January, 1996 by providing copies of financial disclosures that she had produced previously, and by asking Bob to advise her if he needed further information. *Record* at 89–90. In March, 1996, Bob requested further information, and stated that he would file a motion to compel if Nancy failed to provide the information by March 19, 1996. Nancy responded by providing additional information concerning her income from a partnership and a subchapter-S corporation. She again asked Bob to advise her if he needed further information. *Record* at 90F.

---

5. The Request included a demand for "any books or records maintained by [Nancy] or any person on [Nancy's] behalf, showing the expenses, debts, assets and/or acquisitions of [Nancy] from January 1, 1995, to date." *Record* at 21. The Request also sought deeds, mortgages, and other evidence of any real or personal property in which Nancy had an interest. *Record* at 22. In his Interrogatories, Bob asked Nancy to list all assets in which she had an interest, and the historical and present value of each. *Record* at 25.

The Record contains no further requests for information by Bob until his Motion to Compel on May 2, 1996. Bob filed that motion four days before the deposition of Nancy's accountant, which was just three days before the final hearing. The trial court did not rule on the Motion prior to the hearing, so the parties presented arguments concerning the Motion at the hearing. *Record* at 174–75. After hearing the arguments, the trial court denied the Motion and scheduled a final hearing in August, 1996. Nineteen days before the final hearing, Bob filed his Motion to Reconsider concerning the discovery issues. Given Bob's decision to wait until just before the scheduled hearings to file his discovery motions, and his apparent decision not to pursue discovery prior to the hearings, the trial court did not abuse its discretion in denying the discovery motions.

## SUMMARY

We affirm the trial court's allocation of marital property and the discovery rulings. We reverse the $63,341.91 cash judgment as to the amount attributable to the three satisfied debts ($57,114). We affirm the cash judgment as to the amount attributable to the one outstanding debt. Our decision results in a $6,227.91 cash judgment in favor of Nancy which shall, as the trial court ordered, draw statutory interest and be entered as a lien upon Bob's property until paid.

Affirmed in part, reversed in part and remanded to the trial court for entry of judgment consistent with this opinion.

SULLIVAN and FRIEDLANDER, JJ., concur.