# IN THE COURT OF APPEALS OF IOWA

No. 18-1695
Filed August 7, 2019

IN RE THE MARRIAGE OF WILLIAM J. BRINCKS
AND VICTORIA HEYING-BRINCKS

Upon the Petition of
WILLIAM J. BRINCKS,
        Petitioner-Appellee,

And Concerning
VICTORIA HEYING-BRINCKS,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, Judge.


        Victoria Brincks appeals the district court's order dissolving her marriage to William Brincks. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        William P. Baresel of Prichard Law Office, PC, Charles City, for appellant.

        Christopher F. O'Donohoe of Elwood, O'Donohoe, Braun & White, LLP, New Hampton, for appellee.


        Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Victoria Brincks appeals the district court's order dissolving her marriage to William Brincks. Upon our review, we affirm the order in part and reverse the order in part, and we remand for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

After almost thirteen years of marriage to Victoria, William Brincks petitioned to dissolve the marriage. While the case was pending, William moved to continue, stating "the parties have agreed to file a joint petition for relief in bankruptcy and trial of this matter should not be held until they have received their discharge." The motion was granted and trial was ultimately set for June 13, 2018.

The parties filed a pretrial stipulation identifying all matters on which they had agreed. The parties did not agree to an allocation of marital debts and asked that the court distribute the debts, explaining:

> The parties have abandoned their house and have stopped making payments required by their mortgage. They anticipate a foreclosure action. William is attempting to convey his interest to the mortgage holder by Quit Claim Deed. Victoria has not expressed any interest in doing so. The parties borrowed $11,000.00 from Victoria's parents to put in a new furnace. William has discharged this debt in bankruptcy and he offered the opportunity to Victoria to file a joint bankruptcy petition with him but she refused to do so.

Six joint debts totaling $20,971.14 were set out in the stipulation. The parties also filed a pretrial partial settlement stipulation. In it they agreed William "discharged the judgment debts and the debt to [Victoria's] parents in bankruptcy."

At trial Victoria testified she did not join in filing bankruptcy with William because most of the marital debts had been paid—several by garnishment of her wages. She submitted an exhibit listing bills she had paid that she claimed were

marital debts, and she requested "total reimbursement" from William of $21,004.14.[1] Some debts had been paid off and some still had balances due. Victoria's testimony was a bit vague on this point. Other than Victoria's brief testimony and her exhibit, she offered no evidence verifying the existence of the debts. Except for the debt to her parents, there was no evidence on the original amount of the debts. Although Victoria paid off some bills, she was not sure how much William had paid towards the original debts.

William testified he made payments on the eldest daughter's medical bills and paid some on another bill. His testimony on this point was as vague as Victoria's. William testified he filed for bankruptcy and offered to pay for Victoria to do so, but she declined. He offered no testimony or evidence showing when he petitioned for bankruptcy, when the discharge was granted, or what debts were discharged. Though William stated in the pretrial stipulation that the parties' marital debt owed to Victoria's parents was discharged in bankruptcy, he offered no testimony or evidence at trial to support that claim. He did not offer or take any position at trial on the other debts for which Victoria sought reimbursement.

Following trial, the court entered the following order:

> The parties entered into a partial stipulation that is approved. The parties' marriage is hereby dissolved.
> The parties could not agree on William's obligation to pay certain debts. He filed a chapter 7 bankruptcy petition and his obligation to pay listed marital debts has been discharged. The court has been provided no case law or statutory authority that allows this court to enter judgment against William for debts he has federally discharged. While the parties have an equal obligation to pay the listed debts, William has discharged his obligation and the court declines to order him to pay Victoria for his share.

---

[1] This figure differs from the stipulation by $36 because the figures for one debt were transposed between the pretrial stipulation and Victoria's exhibit.

William shall pay Victoria $1000 towards her attorney fees.

Victoria appeals. Our review is de novo. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

## II. *Discussion.*

In declining to order William to pay his share of the marital debt, Victoria argues the district court did not provide for an equitable division of the marital debt. At issue on appeal are four of the six listed marital debts: CBSI, Inc. $748.07 (family medical bills); H & R Accounts $684.72 (family medical bills); Holthaus Construction $4440.35 (reconstruction of marital home); and Roger and Irene Heying (Victoria's parents) $11,000 (new furnace for marital home).[2]

Victoria testified the CBSI, Inc. bill was paid off. Asked who paid it, Victoria responded, "I paid off half of it, and then another half, and then [William] paid part of it." She wasn't sure how much William paid on that bill. Asked how much she paid on the bill, Victoria stated, "I'm not sure."[3] William testified he paid $200 toward the bill before it was "turned over to small claims."

Victoria stated she paid the full $684.72 due on the H & R Accounts bill. William said he probably paid $100 towards the bill before it went to small claims.

Victoria said the $4440.35 Holthaus Construction bill was "almost" paid off, with $500 still left owing. William said he got three bills from Holthaus Construction—"Some were like $7500, some were like $5600." He said he probably paid "right around $800." Apparently, Holthaus Construction obtained a

---

[2] Victoria has apparently abandoned her claim for reimbursement of $4134 in expenses she incurred for the eldest child.

[3] At trial she was asking reimbursement in the amount of $748.07. Her March 2017 financial affidavit shows the balance of the CBSI, Inc. bill was $1192.77.

judgment at some point against William and Victoria. After William filed for bankruptcy, Holthaus Construction began garnishing Victoria's wages every pay period.

As for the $11,000 furnace loan from her parents, Victoria said William had paid some of it and she paid "$5500 and some, $80 I think it is." Later she said she paid her parents some $5000 between 2105 and 2017. William was not asked how much he paid to Victoria's parents toward the loan.

In their pretrial partial settlement stipulation, the parties agreed William "discharged the judgment debts and the debt to [Victoria's] parents in bankruptcy."[4] In their pretrial stipulation, the parties agreed "William has discharged [the furnace debt to Victoria's parents] in bankruptcy." No one offered any documentation or testimony at trial to support the assertion that marital debts were discharged in William's bankruptcy.[5] The district court found that William "filed a chapter 7 bankruptcy petition and his obligation to pay listed marital debts has been discharged." Victoria does not challenge this finding. Instead, she argues that in declining to order William to pay his share of the marital debt, the district court did

---

[4] Presumably, the CBSI, Inc., H & R Accounts, and the Holthaus Construction debts were "judgment debts," but without documentation we are not positive.
[5] William slipped a copy of the bankruptcy order of discharge into the appendix. It is not a part of the district court record, and we therefore cannot consider it. *See* Iowa Rs. App. P. 6.801 ("Only the original documents and exhibits *filed in the district court case from which the appeal is taken*, the transcript of proceedings, if any, and a certified copy of the related docket and court calendar entries prepared by the clerk of the district court constitute the record on appeal." (emphasis added)), 6.905(1)(b) (saying contents of appendix are limited to parts of the district court record); *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded."). Even if the order were a part of the record, it would provide no assistance to us since it references no particular creditors or debts. The parties did not provide the district court with a list of creditors filed with the bankruptcy court.

not provide for an equitable division of the marital debt. So, for purposes of this appeal, we will assume the four marital debts in issue here were, in fact, discharged in William's bankruptcy.

Our task here is to resolve the tension between applying the bankruptcy law and applying the equitable foundations of our dissolution-of-marriage laws. On one hand, "[b]ankruptcy attempts to provide the debtor a 'fresh start' in life, an opportunity to begin anew 'unhampered by the pressure and discouragement of preexisting debt.'" *In re Marriage of Trickey*, 589 N.W.2d 753, 757 (Iowa Ct. App. 1998) (quoting *Perez v. Campbell*, 402 U.S. 637, 648 (1971)). To that end, a discharge order generally "serves 'as an injunction against the commencement or continuation of an action' against the debtor for prepetition liabilities." *Greenbriar Grp., L.L.C. v. Haines*, 854 N.W.2d 46, 51 (Iowa Ct. App. 2014) (quoting 11 U.S.C. § 524(a)(2)). On the other hand,

> Iowa is an equitable division state. An equitable division does not necessarily mean an equal division of each asset. Rather, the issue is what is equitable under the circumstances. The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. Iowa courts do not require an equal division or percentage distribution. The determining factor is what is fair and equitable in each circumstance. The distribution of the property should be made in consideration of the criteria codified in Iowa Code section 598.21(5) [(2016)]. While an equal division of assets accumulated during the marriage is frequently considered fair, it is not demanded.

*In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009) (citations omitted). The allocation of marital debts between the parties is as integral a part of the property division as is the apportionment of marital assets. *See In re Sullins*, 715 N.W.2d 242, 251 (Iowa 2006).

We find no case law in Iowa where one spouse's marital debts were discharged in bankruptcy *while* the dissolution was pending or before the dissolution decree was entered.  It comes as no surprise that other courts are split on the issue.

In *Mosley v. Mosley*, 450 S.E.2d 161, 164-65 (Va. Ct. App. 1994), a husband discharged joint marital debts in bankruptcy court during his divorce proceedings.  Later, the circuit court in the divorce proceeding granted the wife a "lump-sum spousal-support" award.  *Mosley*, 450 S.E.2d at 164.  The court stated its purpose was "to compensate [the wife] for ½ the value of [the husband's] use of the marital home [which was based on his failure to make mortgage payments as agreed], ½ of the debt to the credit union and ½ of all other secured and unsecured marital debt."  *Id.*  Because it was clear the court intended to compensate the wife for the husband's share of the marital debt that was discharged, the appellate court found the order impermissible, holding the award "would, in effect, serve to circumvent the discharge granted by the federal bankruptcy court."  *Id.*

In *Hitchcox v. Hitchcox*, 693 N.E.2d 629, 633 (Ind. Ct. App. 1998), the appellate court held:

> The inclusion of the debt in the marital pot does not disrupt [the husband's] discharge in bankruptcy, because inclusion in the marital pot does not resurrect [the husband's] liability on the debt.  The trial court found that [the wife] remains liable for the debt, and [the husband] cited no persuasive evidence to the contrary.  Given that [the wife] remains liable, the debt was properly included in the marital pot.

Similarly, in *In re Marriage of Cesaretti*, 561 N.E.2d 306, 311 (Ill. Ct. App. 1990), the husband argued on appeal that the trial court's award of a sum to the wife as

an adjustment for a liability she still owed violated the "fresh start" policy of the Bankruptcy Code. As in *Hitchcox*, the appellate court disagreed and affirmed the trial court's award. *Cesaretti*, 561 N.E.2d at 311. The court explained:

> [The husband] declared bankruptcy while the parties were still married, yet [the wife] was not informed, nor was she named as a creditor. Thus, the debts from the marriage remained even though [the husband] was discharged from liability to the creditors of those debts. The $3,000 awarded to [the wife] was compensation for her liability. It is well settled that marital debts as well as marital assets must be distributed equitably. Requiring [the husband] to pay [the wife] for a portion of the marital debts he left her with is not contrary to the Bankruptcy Code. While [the husband's] liability to the creditors was obviously discharged by the bankruptcy proceedings, we do not find that those proceedings discharged his liability to the marriage resulting from the subsequent divorce.

*Id.*

In following the equitable precepts of our dissolution of marriage laws, we find *Hitchcox* and *Cesaretti* more convincing. Although William's liability to his creditors was discharged, his liabilities to the marriage were not. We do not believe that including the debts in the "marital pot" and dividing them equitably sidesteps the Bankruptcy Code in the limited circumstances of this case. To do so does not resurrect William's liability to the creditors. To not do so unfairly burdens Victoria with a disproportionate share of joint marital debt. Our law mandates an equitable division of marital property—including debt. The district court's order must therefore be reversed in part.

### III. Conclusion.

Upon our de novo review, we affirm the part of the district court's order dissolving the marriage. But we reverse the part of the district court's order declining to order William to pay his share of the marital debts in issue on appeal.

Because the district court made no fact-findings on the balance of debts it found to be marital debts, we remand for further proceedings consistent with this opinion.

We decline William's request for an award of appellate attorney fees. Costs on appeal are taxed to William.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**