*In re* MARRIAGE OF SHERRY CESARETTI, Petitioner-Appellee, and DARYL CESARETTI, Respondent-Appellant.

Second District No. 2—89—1205

Opinion filed September 21, 1990.

Michael T. Smith, of Law Offices of Michael T. Smith, of Hanover Park, for appellant.

No brief filed for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Respondent, Daryl Cesaretti, appeals from the judgment entered by the trial court dissolving the marriage between himself and petitioner, Sherry Cesaretti. On appeal, Daryl raises the following issues: (1) whether the trial court's order granting Daryl temporary custody of the couple's minor child must be interpreted as an order granting him permanent custody; (2) whether the trial court's division of the savings account Daryl had with his employer was against the manifest weight of the evidence; (3) whether the trial court erred in awarding Sherry $3,000 as an adjustment to the marital debts; and (4) whether the trial court erred in awarding Sherry $75 per week for the support of the couple's minor child. We affirm in part, reverse in part and remand.

Daryl and Sherry Cesaretti were married on October 26, 1984. Two months later, Sherry got pregnant, and on September 2, 1985, a daughter, Jaymie, was born to the marriage. On January 21, 1986, Sherry filed a petition for dissolution of marriage. At that time, she was 24 years of age and Daryl was 29. Sherry alleged that she and Daryl had stopped living together through the sole fault of Daryl. Sherry claimed that Daryl had been guilty of extreme and repeated acts of physical cruelty. Sherry requested, among other things, that

she be awarded custody of Jaymie and support for her.

Daryl responded on February 11, 1986, by filing a counterpetition for dissolution of marriage. In the counterpetition, Daryl alleged that during the time the parties lived together as husband and wife, he always conducted himself as a good, true, faithful and affectionate husband. He claimed that Sherry conducted herself with extreme and repeated acts of mental abuse by embarrassing and intimidating him through her alcoholism, infidelity and continued association with known drug users. Daryl requested that he be awarded the sole care, custody and control of their daughter. He also sought temporary and permanent support for the child.

Thereafter, Daryl moved back in with Sherry until September 1986 when Sherry moved out. On October 8, 1986, Daryl filed a petition for temporary custody. On October 9, 1986, a conciliation order was filed referring both parties to a psychologist for counseling on the issue of custody and/or visitation.

On June 6, 1988, a hearing was held on Daryl's petition for temporary custody. At the hearing, it was revealed that Daryl works for the United Parcel Service in the early morning hours and for the Village of Schaumburg and Rolling Meadows part time as a meter reader. Sherry works part time as a waitress. Since the couple's separation, Sherry has had another child, Maria, with her boyfriend, Salvadore Medina. Maria was eight months old at the time of the hearing. Sherry testified that Salvadore does not live with her, but they are intending to get married. Prior to the hearing, Sherry had custody of Jaymie, and Daryl was paying her $75 a week. At the conclusion of the hearing, the trial judge ruled that custody should temporarily remain with Sherry. Daryl was granted visitation from Friday 3 p.m. to Monday 3 p.m. and the $75 a week for support was ordered to continue. Daryl filed a petition for leave to appeal the trial court's order, which this court denied on September 7, 1988.

On July 5, 1989, trial on the parties' petitions for dissolution of marriage commenced and was not concluded until July 21, 1989. At the hearing it was revealed that Daryl is a born-again Christian and has allegedly given up his prior use of drugs and alcohol. Daryl alleged, however, that Sherry did not similarly give up her use of the substances and that apparently caused some friction in their relationship. In contrast, Sherry claims that Daryl himself did not give up his use of the substances, and the cause of the friction was his rigid religious beliefs, physical abuse, and jealousy.

Daryl claimed that after the parties separated, Sherry's life became very unstable. She was evicted from her apartment twice and

had difficulty maintaining employment. Sherry argued that her poor employment record was due in part to the fact that Daryl would harass her at work.

Daryl works early morning hours at his job with United Parcel Service and has since quit his job for the Village of Schaumburg. Because of his hours, his mother baby-sits Jaymie while Daryl is working. Sherry claimed that Daryl and his mother have prevented her from seeing Jaymie. Sherry recalled one incident in September 1988 when the police were called to escort her to Daryl's mother's house to pick up Jaymie.

Daryl maintained that Sherry is allowed to see the child whenever she wants; however, he claimed that that is not very often. Daryl recalled a confrontation that occurred between him and Sherry's boyfriend, Salvadore, in April 1988 when Daryl went to pick up Jaymie from Sherry's apartment. The police were called, and Daryl was not permitted to take the child. Sherry claims that the reason Daryl was not permitted to take the child was because Jaymie was sick.

Sherry testified that she wants her two daughters to grow up together as a family. She admitted that Salvadore physically abused her, and as a result they are now separated, and he is seeking counseling.

On September 11, 1989, the trial judge announced her decision dissolving the marriage. Daryl was awarded temporary custody of Jaymie for six months at which time custody was to be reviewed. The judge stated that during that time Jaymie was to spend approximately equal time with each parent and set forth a schedule indicating so. Both parties were ordered to attend counseling. Sherry was awarded $750 representing one-half of a savings account Daryl had with United Parcel Service. In addition, Daryl was ordered to pay Sherry $3,000 as and for an adjustment to the marital debts, payable over an 18-month period in equal monthly payments. Daryl was also ordered to pay Sherry $75 per week for the support of Jaymie. A written judgment incorporating the judge's rulings was filed October 17, 1989. On that same day, Daryl filed a motion to reconsider, which was denied. Thereafter, Daryl filed a timely notice of appeal. Sherry filed a motion to dismiss the appeal for lack of jurisdiction, and Daryl filed objections to the motion. This court ordered both the motion and objections to be taken with the case.

■ Thus, before we consider the merits of the appeal, we will first address the issue of whether this court has jurisdiction. Sherry contends that because the judgment for dissolution provided for temporary custody to be reviewed in six months, it was not a final and appealable judgment. Sherry cites to *In re Marriage of Ryan* (1989),

188 Ill. App. 3d 679, wherein this court held that in dissolution actions the issues of support, property division, dissolution and custody are considered to be ancillary parts of the single claim for dissolution, and to avoid piecemeal review, orders determining only a single issue are not appealable until all other issues in the dissolution action are finally resolved. (*Ryan*, 188 Ill. App. 3d at 681.) However, in the case at bar all issues other than custody have been resolved, and thus the policy against piecemeal appeals will not be significantly served by denying this judgment finality status. (See *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 3-4; *In re Marriage of Parks* (1984), 122 Ill. App. 3d 905, 908-09.) To hold otherwise would preclude review of any issue raised by the dissolution judgment until the issue of custody is conclusively and permanently decided; we find this to be an untenable proposition. (See *In re Marriage of Cannon* (1986), 112 Ill. 2d 552, 555.) Accordingly, we deem the trial court's custody award to be "final" so as to be appealable, but subject to the trial court's later review. (*In re Marriage of Lawrence* (1986), 146 Ill. App. 3d 307, 310.) Thus, Sherry's motion to dismiss the appeal is denied, and we will consider the issues raised.

■ We note that Sherry has not filed an appellee's brief. Nevertheless, this court will decide the merits of this appeal because the record is clear and the claimed errors are such that the court can easily decide them without the aid of the appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133.

■ We first address Daryl's contention that the trial court intended sole and permanent custody to be placed with him. We find no support in the record for this contention. In fact, after noting both parties' faults, the trial judge specifically stated that she was intending to split the custody as close to 50% with each parent as possible. She explained that the purpose of the temporary custody was essentially to see whether the parties could conform to the court's order, which she had found not to be the case in the past. The judge commented that "the question of legal custody is only for the sake of having one person at this time to make certain decisions, and it's because of the instability at the present time of Sherry's life. And when that is straightened out, then the Court can address it." In the dissolution judgment, the trial court further held that "neither parent has demonstrated the ability and maturity to provide for the total care of the child and insure that the best interest of the minor child is served." Thus, a review of the record indicates that the trial court clearly did not intend for Daryl to have sole, permanent custody of Jaymie.

■ Because we find that the trial court awarded Daryl temporary custody of Jaymie to be reviewed in six months, we must now consider Daryl's contention that in making such a temporary order the trial court committed error. In *Carroll v. Carroll* (1978), 64 Ill. App. 3d 925, the appellate court held that while custody cases require careful decision and should turn upon the best interest of the child, a trial court cannot avoid the possible consequences of an order by making all orders temporary "experiments" to see which set of circumstances will result in the best living conditions for the children. (*Carroll,* 64 Ill. App. 3d at 929.) In *Carroll,* a dissolution of marriage case, the trial judge originally granted temporary custody of the parties' minor children to the mother. One and a half years later when an oral judgment for dissolution was granted, the trial court told the parties that they were to have joint custody of the children, and the judge left the children in the physical custody of their mother. The judge stated, "[w]hat I intend to do in this case is to grant joint custody of these children. And I am going to work out the terms of that joint custody. I have not worked that out yet." (*Carroll,* 64 Ill. App. 3d at 926.) Later, in modifying physical custody upon petition of the father, the trial judge stated, "[a]t the time the case was decided before *** I wanted to see whether or not my order that was entered at that time would work." (*Carroll,* 64 Ill. App. 3d at 928.) The judge continued the joint custody, but transferred the physical custody of the children from their mother to their father. The written order for divorce was then entered and the marital property distributed. The mother appealed. In order to determine the appropriate standard of review, the appellate court had to decide whether the trial court's modification of custody was from a permanent or temporary order. In holding that the order was permanent, the court noted:

> " '[T]he children and the parents are certainly entitled to a certain degree of finality and conclusiveness when an order of custody is entered. Custody of children is the most important aspect of divorce, and *this matter should not be subject to frequent modifications where the order was not conditional with respect to such changes.*' " (Emphasis added.) *Carroll,* 64 Ill. App. 3d at 930, quoting *King v. Vancil* (1975), 34 Ill. App. 3d 831, 834-35.

■ In the case at bar, the custody order was, in fact, expressly made conditional upon the stability of Sherry's life, and, thus, we find that it was a temporary order but final for purposes of review. In making the order temporary, the trial judge clearly circumvented the effect of section 610 of the Illinois Marriage and Dissolution of Mar-

riage Act (Ill. Rev. Stat. 1989, ch. 40, par. 610), which provides that custody awards are generally not modifiable for two years and then are only modified by use of the more stringent standards set forth in section 610(b) (Ill. Rev. Stat. 1989, ch. 40, pars. 610(a), (b); *In re Marriage of Gibbons* (1987), 158 Ill. App. 3d 998, 1000-01). The legislative intent behind section 610 is to make custody arrangements as permanent as possible. (*Gibbons*, 158 Ill. App. 3d at 1001.) We find that a trial court should not be allowed to evade the effects of section 610 by making a custody order temporary, especially where all the other issues in the case have been resolved and all the. evidence is in. A trial judge must make a permanent decision based on the evidence presented and cannot continue temporary custody from time to time either to avoid making a difficult decision or to avoid the requirements of section 610. Thus, in the interest of the child in the case at bar, we remand the cause to the trial court with directions to enter an order deciding the issue of permanent custody.

Next, Daryl argues that the trial court's decision granting Sherry $750 from his savings account is against the manifest weight of the evidence. In his brief, Daryl admits that $750 represents one-half of an account he kept with his employer at United Parcel Service. He further admits that this money was earned during the marriage, but after the parties' separation, and that $800 of the $1,500 account was previously withdrawn by him. Daryl contends that there was no argument or evidence set forth showing that Sherry was entitled to the sum awarded and that because the trial court did not make any factual findings in support of its ruling, the reviewing court is left to guess as to the basis of its judgment, which Daryl argues is improper. *Hanaman v. Davis* (1959), 20 Ill. App. 2d 111, 114-15.

 █ A review of the record, however, reveals that the trial court did indeed make factual findings, and they were basically those set forth by Daryl in his appellant's brief. In addition, the record indicates that the savings account to which the trial court and Daryl referred is actually a "thrift plan" Daryl has set up with United Parcel Service. Under section 503(b) of the Illinois Marriage and Dissolution of Marriage Act, all property acquired by either spouse after the marriage, but prior to a judgment of dissolution, is presumed to be marital property. (Ill. Rev. Stat. 1989, ch. 40, par. 503(b).) In the instant case, Daryl admitted that the $1,500 was earned prior to the judgment of dissolution. He has submitted no argument as to why the money should not be considered marital property or that it was improperly divided. It is well settled that the distribution of marital property rests with the sound discretion of the trial court, and its de-

cision will not be reversed absent an abuse of discretion. (*In re Marriage of Dall* (1989), 191 Ill. App. 3d 652, 663.) We find that no abuse of discretion has been shown and thus decline to disturb the trial court's ruling.

Daryl next contends that the trial court erred in awarding Sherry the sum of $3,000 as and for an adjustment of marital debts. Daryl argues that he had been discharged from personal liability on those debts through a chapter 7 bankruptcy and thus the State erred in making him responsible for them. The record reveals that in 1987 Daryl, without informing Sherry, filed a petition for bankruptcy. While Daryl was discharged from debts that were incurred during the parties' marriage, no arrangements were made for Sherry to be similarly discharged. Thus, credit information submitted by Sherry indicates that she remains liable for those debts. As an adjustment for that liability, the trial court awarded her $3,000. Daryl contends that this is improper as it violates the "fresh start" policy of the Bankruptcy Code. *In re Marriage of Lytle* (1982), 105 Ill. App. 3d 1095, 1099.

In support, Daryl cites to *LaRue v. LaRue* (1950), 341 Ill. App. 411. In *LaRue*, the wife had loaned her husband $1,300, and as part of the divorce decree entered January 6, 1948, the husband was ordered to repay the loan. On April 18, 1949, the husband was adjudicated bankrupt, and his wife was named as a creditor in the proceedings. On April 29, 1949, the wife filed a petition for rule to show cause why the husband should not be punished in contempt for his refusal to pay the loan. After a hearing on the issue, the trial court found in favor of the wife and held the husband in contempt. The appellate court reversed the order of contempt, noting that upon an adjudication in bankruptcy, title to the bankrupt property vests in the trustee of bankruptcy as of the date of filing the petition and the bankruptcy court has exclusive jurisdiction, possession, and control of the estate of the bankrupt which cannot be affected by proceedings in the State court. (*LaRue*, 341 Ill. App. at 414.) The court held that the repayment of the loan was a civil debt, rather than alimony, and thus was dischargeable in bankruptcy. *LaRue*, 341 Ill. App. at 415.

■■ An analysis of the facts in the case at bar indicates that this case is clearly distinguishable from *LaRue*. In *LaRue*, the wife was named as a creditor and was notified of the bankruptcy proceedings which occurred *subsequent* to the divorce. In contrast, Daryl declared bankruptcy while the parties were still married, yet Sherry was not informed, nor was she named as a creditor. Thus, the debts from the marriage remained even though Daryl was discharged from liability to the creditors of those debts. The $3,000 awarded to Sherry was com-

pensation for her liability. It is well settled that marital debts as well as marital assets must be distributed equitably. (*In re Marriage of Goforth* (1984), 121 Ill. App. 3d 673, 680; *In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 868.) Requiring Daryl to pay Sherry for a portion of the marital debts he left her with is not contrary to the Bankruptcy Code. While Daryl's liability to the creditors was obviously discharged by the bankruptcy proceedings, we do not find that those proceedings discharged his liability to the marriage resulting from the subsequent divorce.

Lastly, Daryl contends that the trial court erred in requiring him to continue paying child support when he was awarded custody of their child. Section 505(a) of the Illinois Marriage and Dissolution of Marriage Act provides that "[i]n a proceeding for dissolution of marriage *** the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support." (Ill. Rev. Stat. 1989, ch. 40, par. 505(a).) The necessity for child support, as well as the amount of the award, are decisions within the sound discretion of the trial court and will not be set aside unless found to be contrary to the manifest weight of the evidence. *In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 1014.

In arguing that the trial court erred in its award, Daryl contends that once legal and physical custody is placed in one parent, that custodial parent has no obligation to pay child support to the non-custodial parent. (*Shoff v. Shoff* (1989), 179 Ill. App. 3d 178, 186.) In *Shoff*, the father was granted temporary physical custody of the parties' minor child. Because the mother lived out of State and rarely visited the child, the father provided for all of the child's financial needs. Consequently, the trial court found, and the appellate court agreed, that, as a matter of equity and fairness, the father's obligation to pay child support to the mother terminated when the temporary custody order was granted. *Shoff*, 179 Ill. App. 3d at 186.

We find the principle announced in *Shoff* to be inapplicable to the case at bar. Here, the trial court awarded Daryl temporary custody of Jaymie, but specifically stated that she shall spend approximately equal time with each parent as indicated by a schedule set forth in the decision. Because of the equal amount of time spent with the child, and hence the relative financial contribution, we do not find the trial court's award of support to be manifestly erroneous.

In addition, we note the disparity in the financial conditions of the parties. While the financial responsibility for the support of a child is the joint obligation of the parents, it is only equitable that

the parent with the disproportionately greater income should bear a greater share of the costs of support. (*In re Marriage of Rogliano* (1990), 198 Ill. App. 3d 404, 413.) At trial, Daryl testified that he has a yearly gross salary of over $20,000 working at two jobs, his monthly expenses total approximately $1,000, and he has approximately $1,500 in assets. Sherry testified that she earns approximately $7,000 a year working as a waitress, her monthly expenses total over $2,000, and she is in debt over $20,000. Given these circumstances, we cannot say that the trial court's award of $75 per week for child support was erroneous.

For the above-stated reasons, we affirm the judgment of the trial court and remand the cause for a decision on the issue of permanent custody.

Affirmed in part; reversed in part and remanded.

McLAREN and GEIGER, JJ., concur.