2019 IL App (1st) 191467-U

FIFTH DIVISION
December 13, 2019

No. 1-19-1467

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF<br>ERIKA BUSH, | ) | Appeal from the Circuit Court of<br>Cook County |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 2017 D 230075 |
| and | ) | |
| | ) | |
| EDWIN F. BUSH, | ) | |
| | ) | Honorable John T. Carr, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    ***Held:***  The circuit court erred in bifurcating the judgment of dissolution of marriage. We dismiss the appeal in part, affirm the judgment in part, vacate in part, and remand with instructions.

¶ 2                                    I. BACKGROUND

¶ 3    Edwin and Erika Bush were married in 2008 and are the parents of two children. Their son,

J.B., was born in 2011, and their daughter, A.B., was born in 2015. In February, 2017, Erika filed

a petition for dissolution of the marriage, requesting "sole parental responsibilities." Edwin is a

licensed attorney and, although he was represented by counsel at various times during this case, at most relevant times he proceeded *pro se*. Indeed, even while he had an attorney of record, he often filed motions on his own behalf.

¶ 4    Shortly after this case began, Erika filed an affidavit alleging that Edwin had uncontrolled anger issues. Edwin filed a petition for contempt, claiming that Erika had made false allegations against him to both the court and the police. These two themes persisted throughout the ensuing litigation.[1] On March 7, 2017, the court entered a temporary parenting schedule. From time to time, each party filed motions with the court accusing the other of failing to comply with the parenting schedule, and the court periodically modified the parenting schedule over the course of 2017, including ordering that child transfers occur at the local police station.

¶ 5    The court appointed a children's representative and an expert to provide a report on parenting and custody. The expert, Dr. Sol Rappaport, completed his evaluation on November 12, 2017.

¶ 6    In January, 2018, the court set a trial date for April 3 of that year. On March 26, just over a week before the scheduled trial date, Edwin petitioned for substitution of judge for cause, alleging that several of the court's orders relating to parenting time were improper and showed "deep-seated antagonism *** that would make fair judgment impossible." However, that petition became moot because the judge voluntarily recused herself. Shortly thereafter, another judge granted the children's representative's motion to be discharged on the grounds that Edwin's "rhetoric, pleadings and communication [had] been disturbing and escalating in nature." Before

---

[1] Throughout their briefs, both parties refer to various filings, including motions, as "pleadings." Before the circuit court, both parties routinely responded to motions as if they were pleadings, by admitting, denying, or claiming a lack of knowledge as to each paragraph, rather than addressing the movant's factual and legal arguments. This practice is unfortunately common in domestic relations cases and "leads to improper pleadings and motions, excessive pleading and motion practice, increased costs, congested courts, and poor records on appeal; all of which stand in the way of prompt and effective administration of justice." Sanjay T. Tailor, Better Civil Practice in Dissolution of Marriage Litigation, 40 Loy. U. Chi. L.J. 911, 921 (2009).

making any other substantive rulings, the second judge recused herself. The case was then assigned to Judge John T. Carr.

¶ 7 The newly assigned judge was immediately faced with petitions from each party to modify the parenting schedule, repeating the familiar allegations of Edwin's anger issues and Erika's disingenuousness to the court and law enforcement. On June 7, 2018, the court entered a "summer parenting schedule" that granted Edwin more parenting time, and appointed a guardian *ad litem* (GAL) for the children. The parties' disputes continued throughout the summer.

¶ 8 On October 9, 2018, Erika filed an emergency petition for an order of protection on behalf of the children, and an emergency motion for supervised parenting time. The petition and the motion were supported by nearly identical affidavits in which Erika alleged that her son's behavior at school had deteriorated since Edwin had received additional parenting time. Allegedly, J.B. used inappropriate language toward his teacher and stabbed a classmate with a pencil. The motion for supervised parenting time included the additional allegation that J.B. told a school employee, "I want to kill myself. I want to die so that I can have a new life."

¶ 9 The affidavits also alleged that J.B. had revealed to Dr. Reginald Pacheco, a therapist, that his father had "choked him," and that this meeting with the therapist led directly to an investigation by the Illinois Department of Child and Family Services (DCFS). Erika further alleged that Edwin "exhibited aggressive behavior with the [DCFS] investigator and yelled swear words at her." Edwin filed responses to both the petition for an order of protection and the motion for supervised parenting time. In his response to the motion for supervised parenting time, Edwin argued that the choking allegation and subsequent DCFS investigation were manufactured by Erika. Edwin admitted to grabbing J.B. by the back of the neck, but denied that action was "choking" or inappropriate. He also claimed that the GAL had known about the incident in question for nearly

two months, and had apparently concluded that it was not worth pursuing. Further, he contended that the alleged choking could not be considered an emergency because Erika had let several court appearances pass without raising the issue with the court. Edwin's response to the petition for an order of protection did not address the specific allegations, but accused Erika of engaging in a dishonest campaign to reduce his parenting time.

¶ 10    The next day, the court conducted a hearing on the emergency petition. After hearing testimony from the GAL, Erika, and Edwin, the court entered a 21-day emergency order of protection and set a hearing date for a plenary order of protection. The order reserved the issue of visitation. From the bench, the court made a finding that abuse had occurred. The court also noted that Edwin's "lack of control of [his] anger" was an even more important consideration then the abuse claim.

¶ 11    Edwin filed a notice of appeal the same day and the clerk of this court assigned his appeal number 1-18-2157. However, Edwin did not file his petition for leave to appeal the emergency order of protection until October 15, after the two-day filing period established by Rule 307(d). Ill. S. Ct. R. 307(d)(1) (eff. Nov. 1, 2017). This court dismissed appeal 1-18-2157 for lack of jurisdiction.

¶ 12    On November 6, 2018, the court scheduled a hearing for the plenary order of protection to be held November 30, 2018. The court orally indicated, and the scheduling order reflected, that the court would hear the petition for a plenary order of protection and all other outstanding motions. Although the scheduling order did not explicitly list the motion for supervised parenting time, that motion was still pending.

¶ 13    On November 13, Edwin filed an emergency motion to appoint a new evaluator, Dr. David Finn. The motion argued that Dr. Rappaport was not properly appointed and requested that the

court extend the discovery deadline. The court granted the motion to appoint Dr. Finn at Edwin's expense, but specifically indicated in the order that the scheduled January 24, 2019 trial date would "not be continued due to this evaluation." Dr. Finn evidently never performed an evaluation.

¶ 14    At the November 30 hearing, Tiffany Woodard testified that she was an investigator for DCFS, and that she investigated a report that Edwin had choked J.B. Woodard testified that during her investigation, she interviewed J.B., Erika, and Edwin. She testified that in her interview with Edwin, he used profane language in front of the children, and was "rude", "insulting", and "very erratic". She testified that she felt so threatened by Edwin that she called her supervisor, who recommended that she call for a police escort and that Edwin "voluntarily" forego visitation for a "cooling down period." Edwin was not amenable to that suggestion, and told her and the police to "get the f*** out".

¶ 15    Woodard had also contacted Edwin's girlfriend, the GAL, J.B.'s therapist, the children's pediatrician, and another DCFS worker who had been involved in an earlier investigation of the Bush family. Edwin's girlfriend, who was present at the time of the alleged choking incident, told Woodard that Edwin had grabbed J.B. by the back of the neck rather than "a front-face choke." Woodard testified that, in light of the girlfriend's statements and the lack of any physical injury to J.B., she ultimately determined that the investigation was "unfounded". On cross-examination, Edwin introduced police body camera footage from Woodard's interview at Edwin's apartment.

¶ 16    The video itself does not appear in the record. A document in the record purports to be transcription of the video. As Erika points out, it appears to have been prepared and edited by Edwin personally rather than by a certified court reporter. In his reply brief, Edwin contests that "there is no way to submit video into the *** record." However, our supreme court has provided standards for the submission of non-documentary exhibits. See Ill. S. Ct. Standards and

Requirements for Electronic Filing the Record on Appeal, § 3(d)(v) (eff. June, 2017) (addressing the submission of "video or audio recordings, computer media, discs, flash drives, etc."). In fact, videos are routinely included in the records for both criminal and civil appeals before this court. See, *e.g.*, *Williams v. Department of Employment Security*, 2016 IL App (1st) 142376, ¶ 11 (explicitly noting that a video exhibit was part of the appellate record). Having concluded that the document submitted by Edwin is not a properly certified transcription, we do not consider it in our analysis. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984) (holding that it is the appellant's burden to provide a complete record for review in the appellate court).

¶ 17    Next, Erika testified that she was with J.B. when he told the therapist that his father had choked him. She also testified that although the DCFS investigation resulted in an "unfounded" determination, she was still seeking an order of protection and supervised parenting time for Edwin. She testified that J.B.'s behavior had improved since the entry of the temporary order of protection.

¶ 18    After Erika rested, Edwin called Dr. Reginald Pacheco. Dr. Pacheco testified that during his first meeting with J.B., Erika was present for the entire session. He testified that Erika first brought up the choking allegation. Although Dr. Pacheco could not recall the specific language used, he testified that J.B. confirmed "that there has been a history of physical abuse." Dr. Pacheco did not ask Erika to leave the room after the allegation surfaced. Dr. Pacheco testified that he was required by law to report the choking allegation to DCFS and that Erika consented to him making a report, although consent was not actually necessary.

¶ 19    Edwin then called the GAL. The GAL clarified that Edwin had never told him that he grabbed his son by the throat, only by the back of the neck. Edwin introduced several emails between the GAL and Erika, in which Erika discussed the alleged choking incident. In the emails,

Erika did not use the word "choke", but alleged that Edwin had "grabbed [J.B.] by the neck, which [Edwin] has done in the past." He also testified that he had seen video of the interview between Woodard and Edwin, during which J.B. said to Woodard and the police, "Don't arrest my father. He didn't choke me."[2]

¶ 20    Before Edwin could call his girlfriend or present his own testimony, the court interrupted and asked, "Do you want me to cut to the chase on this?" To which Edwin answered, "Yes, sir." The court then announced that it would deny the entry of a plenary order of protection. The court stated that grabbing J.B. by the back of the neck was "wrong", but not enough to warrant an order of protection. Nevertheless, the court concluded "that parenting time would seriously endanger the child's mental, moral or physical health and significantly impair the child's emotional development." This decision was based on both Edwin grabbing J.B. by the neck and Edwin's temperament and language toward Woodard and the police. The court stated that the ultimate goal is for Edwin to have a relationship with his children, but that he must first undergo anger management. To that end, the court entered an order denying the plenary order of protection, but requiring that Edwin attend anger management counseling and suspending his parenting time "[u]ntil such time as [Edwin] has completed the anger management and counseling sessions directed by the court and the court is satisfied." A contemporaneous order vacated the temporary order of protection.

¶ 21    On December 24, Edwin filed an emergency motion to (1) reinstate his parenting time, (2) appoint a therapist for the children, and (3) reschedule the trial. In part, the motion to reinstate parenting time relied on statements allegedly made by J.B. during a joint session with Dr. John

---

[2] Presumably this is the same video Edwin showed Woodard on cross-examination. Again, no video appears in the record.

Palen, Edwin's therapist. Apparently, Edwin surreptitiously recorded the therapy session, to obtain evidence that he had not abused J.B.[3]

¶ 22    At the hearing on that motion, the GAL recommended that the court reinstate some parenting time for Edwin. Erika's counsel indicated that "Saturday[s] or Sunday[s] would be fine." The court agreed to reinstate six to eight hours of parenting time per week and ordered the parties to leave the courtroom and to negotiate the details. However, Edwin refused to negotiate any reinstated parenting time, insisting instead to continue his challenge to the November 30 order. Because Edwin would not agree to any change in parenting time short of reversing the November 30 order, the court made no change to the parenting time and continued all issues until the trial date.

¶ 23    On January 23, the day before trial, Edwin filed a petition to substitute Judge Carr for cause. The petition largely consisted of Edwin's procedural and substantive arguments against the November 30 order, as well as complaints that the court had failed to rule on several of his motions. A different judge heard and denied that petition. Although an order denying a petition for substitution of judge is not immediately appealable (*In re Estate of Wilson*, 238 Ill. 2d 519, 580 (2010) (Freeman, J., concurring)), Edwin promptly filed a notice of appeal from the denial of his petition. That appeal was assigned number 1-19-0165 by the clerk of this court and was later dismissed for want of prosecution.

¶ 24    On January 24, the day scheduled for trial. Edwin renewed his motion to continue the trial date, arguing that he had multiple motions that the court had never formally ruled on, and that his pending appeal removed the case from the circuit court's jurisdiction. The court overruled the

---

[3] Like the police video, this recording is not part of the record. A document in the record purports to be transcription of the recording, but it appears to have been prepared and edited by Edwin personally rather than by a certified court reporter. We do not consider it in our analysis.

objections and informed the parties that the trial would proceed. Edwin then walked out of the courtroom. As he was walking away, the court asked, "are you leaving?" Edwin replied, "Yep." He did not return.

¶ 25    The trial proceeded in Edwin's absence, with Erika and the GAL testifying. Erika testified as to her finances and living situation. She also testified about raising the children, unpleasant visitation exchanges, and altercations with Edwin. She testified that Edwin had been verbally abusive and profane in front of the children, and that his anger issues caused concern for his ability to parent. She again testified that after "the DCFS issue," J.B. started swearing at his teacher and expressing suicidal thoughts. She testified that J.B. had been much better since the drastic reduction in contact with Edwin. She then testified about Edwin's education and work history, and that Edwin had not been paying support.

¶ 26    The GAL testified that he perceived Edwin as "a person who wanted to maximize the amount of time he could have with his children, but his inability to separate his anger for this divorce with his wife has unfortunately poured over to his interactions with the children," as evidenced by the altercation with Woodard and the police. He opined that Edwin and Erika could not have joint decision-making responsibilities because of Edwin's anger and stubbornness.

¶ 27    He testified that Edwin's anger, and particularly his inability to perceive how his anger affected the children, interfered with Edwin's ability to parent. He testified that J.B.'s behavior at school had gotten so bad that he was not allowed to return to class until he received therapy. He highlighted certain portions of Dr. Rappaport's evaluation, which was entered into evidence, and recommended that Edwin receive eight sessions of therapy before he be allowed anything more than supervised visitation. In response to the court's question, the GAL recommended a supervisor for visitation and that a new therapist be appointed for anger management. He also recommended

that the court reserve the issue of Edwin's parenting time or limit it to supervised visitation until Edwin attended the mandated therapy.

¶ 28    From the bench, the court stated that adequate grounds existed to dissolve the marriage. The court also ruled that Erika would have all decision-making responsibility for the children. The court recited that it had suspended Edwin's parenting time on November 30, and ruled that Edwin was to only have supervised visitation with the children. Further, the court ruled that the suspension of Edwin's parenting time would be lifted after he attended at least one session of anger management and one session of therapy. The court set a 120-day status hearing on that issue. Erika's counsel made an oral request for fees related to the defense of Edwin's appeal of the emergency order of protection (appeal no. 1-18-2157), which the court granted.

¶ 29    The court entered a written order on January 24, recounting that Edwin had moved for a continuance, that the case had proceeded to trial after Edwin left the courtroom, and that the court "considered [Erika's] motion for judgment on the pleadings, and [her] motion *in limine* to bar examination [of Edwin], lay or opinion witnesses, documents and reports[,] and for default." The order stated that the oral pronouncements of the court would be reduced to a written order later.

¶ 30    On February 11, the court entered an order allowing new counsel to file an appearance on Edwin's behalf, setting a case status hearing later that month, and stating that "[i]f no agreement is reached by 2-28-19 the judgment will be entered." Notwithstanding the language of that order, the court entered an order drafted by Erika's counsel just two days later, incorporating the oral pronouncements from January 24.

¶ 31    Section 9 of the February 13 judgment is captioned "Allocation of Parental Responsibilities." Its first two subsections grant Erika "all sole decision-making authority for the minor children" and provide that she will hold the children's passports. Subsection 9(C) is

10

captioned "Respondent's Parenting Time" and it orders Edwin to attend eight sessions of counseling and eight sessions of anger management. It provides that "[s]uspension of [Edwin's] parenting time shall be terminated upon proper notice and petition and completion of one (1) anger management session and one (1) counseling session." Thereafter, Edwin was to have supervised parenting time with the children, at his own expense. The order then set a date for "[s]tatus on [Edwin's] therapy progress and parenting time." The order also, pursuant to 750 ILCS 5/508(a) (West 2016), ordered Edwin to pay $2,500 to Erika's for fees related to the defense of appeal no. 1-18-2157.

¶ 32    On March 8, 2019, counsel for Edwin filed a motion to vacate or reconsider the February 13 judgment pursuant to section 2-1203 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 2016)). The motion argued that the court erred in entering judgment before the February 28 date mentioned in the February 11 order. The motion also sought reconsideration of the portion of the judgment related to Edwin's parenting time. Specifically, the motion argued that Edwin had already seen Dr. Palen many times, and that complete separation between Edwin and his children was not in their best interests. The motion also requested that the court order family therapy.

¶ 33    The motion to vacate or reconsider was continued from time to time as Erika filed additional motions with the court and the parties negotiated a possible settlement. On May 2, the court entered an order continuing all outstanding issues and noting that a proposed settlement order might be forthcoming. However, Edwin's attorney moved for leave to withdraw his appearance a week later. Edwin filed an objection to his attorney's motion, alleging that his attorney, Erika's attorney, and the GAL had committed "gross negligence" in their drafting of a proposed settlement order that would have reserved the issue of parenting time until the parties could participate in

therapy with Dr. Gwenn Waldmann. Edwin represented that he had contacted Dr. Waldmann independently and determined that she was unwilling to accept the role proposed in the draft agreement. Edwin also suggested that the GAL and his attorney "traded favors" in various cases that they had worked on.

¶ 34    Before his attorney's motion to withdraw was presented, Edwin, once again acting *pro se*, filed a second petition to substitute Judge Carr for cause. Edwin argued that Judge Carr showed actual bias in a number of ways, most notably in his ruling in the November 30, 2018, his denial of Edwin's motion to continue the trial date, and his entry of judgment on February 13, notwithstanding the language of the February 11 order giving the parties time to settle the case.[4]

¶ 35    The second petition for substitution was assigned to Judge Timothy Murphy. Erika argued that any allegations regarding Judge Carr's conduct before January 23 were barred by the doctrine of *res judicata* because the first petition to substitute Judge Carr was denied on that date. She also argued that Edwin's petition was improper because his attorney's motion to withdraw was still pending, and therefore Edwin was not entitled to file any motions or petitions on his own. On May 22, 2019, Judge Murphy heard oral argument on the petition for substitution and Edwin's attorney's motion to withdraw.[5] The court granted Edwin's attorney's motion to withdraw, "struck" those portions of the petition for substitution "as to matters asserted prior to January 23, 2019," and took the petition under advisement.

¶ 36    On June 5, Judge Murphy entered an eleven-page order denying the petition for substitution of judge. The order includes a lengthy recitation of Edwin's arguments, including his contention

_____

[4] In various filings in the months since, Edwin has represented that the court acknowledged that the "early" entry of judgment was a "mistake." However, it is clear that Edwin was not actually present when the court made that alleged acknowledgment, and nothing else in the record indicates that the court entered judgment mistakenly.

[5] No transcript of this hearing appears in the record, but the court's May 22 orders recite that the court heard argument.

"that there was no notice that the proceedings of November 30, 2019 may relate to a potential suspension of parenting time. Rather, only the hearing on the Order of Protection was set to be heard, and indeed that was what was heard." Judge Murphy ruled that even if the court had erred in all the ways alleged by Edwin, those errors were insufficient "to establish a showing of actual prejudice by Judge Carr."

¶ 37    The motion to vacate or reconsider filed by Edwin's attorney on March 8 remained pending, with no hearing date set. On June 6, over four months after the trial, Edwin filed a motion to reopen proofs. His arguments were substantially similar to those advanced in his other motions and petitions.

¶ 38    On June 10, the court entered an order setting a hearing date for the motion to vacate or reconsider and, if necessary, the motion to reopen proofs. The next day, Edwin filed an "emergency" motion attacking the November 30, 2018 order.

¶ 39    On June 27, the court heard argument on Edwin's motion to declare the November 30 order void. The GAL and Erika's attorney both opined that Edwin's motion was procedurally flawed because the November 30 order was an interim order that was no longer in effect after the entry of the February 13 judgment. Edwin argued that the November 30 order was void because there was not a pending motion for supervised parenting time, nor did he have notice that supervised parenting time as an issue set for hearing. Further, he argued that the November 30 order was still in effect because his still-pending motion to vacate or reconsider the February 13 judgment acted to stay enforcement of the final judgment. Edwin also withdrew the reconsideration portion of his motion to vacate or reconsider the February 13 judgment. The court denied the motion to declare the November 30 order void.

¶ 40    Edwin then filed his third petition to substitute Judge Carr for cause. The petition was substantially the same as the second, with the added allegations that Judge Carr had improperly denied Edwin's subsequent motions attacking the November 30 order. On July 2, 2019, another judge denied the third petition as "legally and factually deficient to establish a basis to substitute judge." On July 3, Edwin again moved to vacate the November 30, 2018 order.[6] On July 17, 2019, the court denied the motion to vacate. This appeal followed.

¶ 41    In his July 17 notice of appeal, Edwin specifically seeks review of the February 13, 2019 judgment and the circuit court's June 27, 2019 order denying his June 11 motion to vacate the November 30, 2018 order. He also asks that this court remove Judge Carr for entering the allegedly improper November 30 order.

¶ 42    On July 22, 2019, Edwin filed a section 2-1401 (735 ILCS 5/2-1401 (West 2016)) petition attacking the February 13 judgment. That same day, the circuit court denied both the section 2-1401 petition and Edwin's July 3 motion attacking the November 30 order. The July 22, 2019 order, which denied the July 3 motion and the section 2-1401 petition, is not before us in this case.

¶ 43                                    II. ANALYSIS

¶ 44                                    A. Jurisdiction

¶ 45    On August 26, 2019, Erika filed a motion to dismiss this appeal for lack of jurisdiction. She argued that the July 17 notice of appeal was premature because it predated the July 22 order denying Edwin's 2-1401 petition and his July 3 motion. Her contention was that those filings constituted "postjudgement motions" for the purposes of Illinois Supreme Court Rule 303 (eff. July 1, 2017), so Edwin's notice of appeal should have been filed *after* the court disposed of

---

[6] Edwin's efforts to attack the November 30 order were unrelenting. The record of this appeal contains a copy of a completely separate lawsuit which he filed in the Chancery Division of the Circuit Court of Cook County, naming Chief Judge Evans as a defendant, requesting an order directing Chief Judge Evans to vacate Judge Carr's orders.

them. Edwin responded that his appeal was timely under Rule 303 because "the last pending postjudgment motion directed against" the February 13 judgment was his March 8 motion to vacate or reconsider. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). We denied the motion without prejudice to raising the issue of jurisdiction in her brief, which Erica has done.

¶ 46    As we explained in our order denying Erika's motion to dismiss, this appeal was timely filed. Under Rule 303(a)(1), notices of appeal must be filed within 30 days after the entry of final judgment or, if a postjudgment motion is filed, within 30 days "of the order disposing of the last pending postjudgment motion directed against that judgment". Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Section 2-1203(a) of the Code provides that in non-jury cases, "any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203(a) (West 2016). Once a trial court rules on the merits of a postjudgment motion, the 30-day period for filing the notice of appeal commences to run. *VC & M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 18.

¶ 47    On February 13, 2019, the court entered the judgment of dissolution of marriage. On March 8, Edwin timely filed a motion to vacate or reconsider the February 13 judgment. The March 8 motion was "the last pending postjudgment motion directed against" the February 13 judgment. Edwin's section 2-1401 petition was not a postjudgment motion, because section 2-1401 "applies, by its terms, only in those instances when the 30-day postjudgment period has expired." *In re Haley D.*, 2011 IL 110886, ¶ 66. Moreover, a section 2-1401 proceeding is considered "independent and separate" from the original action. *Warren County Soil and Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Edwin's July 3, 2019 motion is also not a postjudgment motion directed against the February 13 judgment, because it was directed against the November

30, 2018 order. Therefore, the circuit court's July 17 order—denying the March 8 motion—disposed of the last pending postjudgment motion directed against the February 13 judgment. Edwin's appeal, filed that same day, is timely.

¶ 48    There are, however, jurisdictional questions that Erika did not raise. This court has an independent duty to consider its jurisdiction. *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984).

¶ 49    First, as we will discuss at length, we find that the judgment improperly reserved the issue of Edwin's parenting time. There is some confusion about whether improper reservation of an issue is reviewable on appeal because of the singular nature of an action for divorce. Compare *In re Marriage of Britton*, 141 Ill. App. 3d 588, 592 (1986) (holding that reservation of division of marital property is appealable) with *In re Marriage of Rosenow*, 123 Ill. App. 3d 546, 548 (1984) (holding that reservation of division of marital property precludes appellate jurisdiction). We hold that although the February 13 judgment is not final as to all issues, that does not destroy our jurisdiction under Rule 303. A judgment that conclusively resolves all issues except the allocation of parental responsibilities, is "final" for the purpose of establishing appealability. *In re Marriage of Cesaretti*, 203 Ill. App. 3d 347, 352 (1990). Bifurcation of a judgment of dissolution of marriage must be subject to immediate appeal or the issue will become moot when the reserved issue is finally resolved. *In re Marriage of Bogan*, 116 Ill. 2d 72, 76 (1986).

¶ 50    Second, Illinois Supreme Court Rule 303(b)(2) (eff. Jan. 1, 2015) states that the notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." "A notice of appeal confers jurisdiction on a court of review to consider only the judgments specified in the notice of appeal." *Diocese of Quincy v. Episcopal Church*, 2014 IL App (4th) 130901, ¶ 35. An unspecified order is reviewable only where it is a

step in the "procedural progression" leading to the judgment specified in the notice of appeal. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979).

¶ 51    Edwin's notice of appeal specifically seeks review of the February 13, 2019 judgment and the circuit court's June 27, 2019 order denying his motion to vacate the November 30, 2018 order. However, Edwin's brief lists ten separate issues for review, several of which relate to orders that are not indicated in his notice of appeal. We will resolve these jurisdictional questions issue-by-issue.

¶ 52                         B. The November 30, 2018 Order

¶ 53    The bulk of Edwin's brief is dedicated to attacking the circuit court's order of November 30, 2018. However, that order is not specified in his notice of appeal. Rather, the notice of appeal seeks review of the circuit court's June 27, 2019 order, denying a motion to declare the November 30 order void. The June 27 order is not independently appealable because it is neither a final judgment nor a step in the procedural progression leading to the entry of the February 13 judgment. However, we can review the November 30 order because it was a step in the procedural progression leading to the entry of the February 13 judgment.

¶ 54    Edwin makes six arguments directed toward the November 30 order. We need not reach any of these arguments, however, because the November 30 order was superseded by the February 13, 2019 judgment. A temporary custody order is necessarily provisional "and continues only during the pendency of the action." *In re Marriage of Fields*, 283 Ill. App. 3d 894, 901 (1996). After a full hearing on the merits, "the temporary order has fulfilled its purpose and is superseded by the final—or permanent—order." *Id.* "Once the trial court enters the final order, an assumption arises that the court has thereby adjusted for any inequity in its temporary orders." *Id.*

¶ 55    All the temporary custody orders entered by the circuit court, including the November 30 order, were superseded by the February 13 judgment. Although, as discussed below, we find that the February 13 judgment improperly reserved the issue of Edwin's parenting time, it was still "final" in the sense that it superseded the November 30 order and is appealable. Therefore, reversing the November 30 order would serve no purpose. See *In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009) (appeal from a temporary order that is no longer in effect is moot). We dismiss the appeal as to the November 30 order.

¶ 56                      B. Edwin's Motion to Continue the Trial

¶ 57    Edwin next argues that the circuit court erred by denying his motion to continue the trial date. Although Edwin did not list the court's January 24 order, the denial of a motion to continue the trial date is a step in the procedural progression leading to the judgment. Therefore, we have jurisdiction to address the court's ruling on Edwin's motion to continue the trial.

¶ 58    Litigants do not have an absolute right to a continuance. *K & K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 22. Thus, the decision whether to grant or deny a motion to continue is within the sound discretion of the trial court and will not be disturbed unless palpable injustice results or denial constitutes a manifest abuse of discretion. *Id.*; 735 ILCS 5/2-1007 (West). "A circuit court's ruling is considered an abuse of discretion when it is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Id.*

¶ 59    Edwin advances several arguments for why his motion for a continuance should have been granted. First, he argues that the court never actually considered his motion for continuance. This argument is without merit. The record is clear that the court did not categorically refuse to entertain the motion. Edwin first moved to reschedule the trial on December 24. However, when that motion

came to be heard before the court, the continuance portion of the motion was not reached. At that time, the parties were asked, but were unable, to negotiate additional parenting time for Edwin. After the breakdown of the negotiations, the court continued all pending issues until the day of trial. On the day of trial, Edwin renewed his motion and the court heard his argument in favor of his motion. The court, after hearing Edwin's oral argument, denied the motion to continue the trial.

¶ 60    Next Edwin argues that Erika's unconscionable behavior gave her an unfair advantage, necessitating a continuance. Specifically, he argues that Erika manufactured a false claim that he had choked J.B. The ultimate result of that lie, Edwin contends, is that he was denied any parenting time between October 10, 2018 and the day of trial. Without any parenting time, Edwin contends that he was unable to have the children meet with Dr. Finn, leaving Edwin unable to proffer any opinion testimony.

¶ 61    Edwin relies on *In re Marriage of Liszka*, 2016 IL App (3d) 150238 in support of this argument. In that case, the court denied a motion to continue a trial, and barred the testimony of a retained expert. *Id.* ¶ 8-9. We held that the trial court had abused its discretion in making those rulings, because the proponent of the expert testimony had acted diligently in discovery while the other party did not. *Id.* ¶ 37. However, this case is distinguishable from *Liszka*. Here, the court granted Edwin's motion to appoint Dr. Finn on November 14, 2018. From that date until the date of trial, Edwin filed a myriad of motions, briefs, and other documents, but apparently did not prepare witness disclosures, an affidavit of completeness, or an exhibit list. Nor did he file any motion to take the children to see Dr. Finn or to compel Erika to take the children to see Dr. Finn. This is noteworthy since Edwin sought and received an order allowing him to take J.B. to see Dr. Palen. This is a far less compelling situation than in *Liszka*. In that case, the proponent of the expert testimony had requested the requisite documents well in advance of the discovery deadline and

filed two motions to compel discovery. Since the record shows no attempts by Edwin to comply with the discovery deadline or compel Erika to take the children to see Dr. Finn, we cannot say that the circuit court abused its discretion by denying the motion for continuance on this ground.

¶ 62    Edwin's final argument on this issue is that the court's own action caused the need for a continuance. In support of that contention, he incorporates his earlier arguments directed toward the November 30 order, and complains that he could not get a fair trial while his parenting time was suspended. Even if the November 30 order was somehow flawed, Edwin presents no case law or reasoned argument as to how his lack of parenting time necessitated a delay of the trial. "Arguments that are not supported by citations to authority do not meet the requirements of Rule 341(h)(7) [Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018)] and are procedurally defaulted." *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11. To the extent that the lack of parenting time interfered with his ability to obtain expert testimony, this argument fails for the reasons stated above.

¶ 63                                  C. The February 13 Judgment

¶ 64    Edwin's first argument directed toward the February 13, 2019 judgment is that the court did not secure the appointment of an evaluator under 750 ILCS 5/604.10 (West 2016). He contends that Dr. Rappaport's evaluation was "stale" and that the court set an "arbitrary time limit" in the order appointing Dr. Finn. Finally, Edwin contains that the court did not actually read Dr. Rappaport's evaluation.

¶ 65    Dr. Rappaport was appointed in 2017 and submitted his full report to the court on November 12, 2017. One year and one day later, the court granted Edwin's motion to appoint Dr. Finn as an additional evaluator. The contention that the circuit court did not secure the appointment of an evaluator is simply not accurate; the court appointed two of them.

¶ 66    Edwin cites no case law for the proposition that a custody evaluation somewhat more than a year old is "stale" and therefore inappropriate evidence for the court to consider. It is true that a great deal had transpired between the completion of the evaluation and the trial, but Erika and the GAL both testified how things had changed in that time, and Edwin would have been able to argue the persuasiveness of the evaluation had he not absented himself from the trial.

¶ 67    The age of Dr. Rappaport's evaluation is directly tied to the time limit placed on Dr. Finn's evaluation. This case was originally set for trial in April 2018. Each party blames the other for the unreasonable amount of motion practice in this case, but regardless of who bears that blame, the court was well within its authority to set a firm trial date and try to get this case to a conclusion. See *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007) ("the trial court possesses the inherent authority to control its own docket and the course of litigation, including the authority to prevent undue delays in the disposition of cases").

¶ 68    Edwin's contention that the court did not actually read Dr. Rappaport's evaluation is mere speculation. We presume that if a judge has material that is relevant to his decision, he will read it. See *People v. Wolski*, 83 Ill. App. 3d 17, 23 (1980) (before a judge issues a search warrant, he is presumed to have read it and the complaint); *In re Upmann*, 200 Ill. App. 3d 827, 833 (1990) ("We will not presume that the judge did not read the [order drafted by counsel] or realize what was contained therein."). In this case, the judge had Dr. Rappaport's evaluation (perhaps as soon as the case was assigned to him, since the evaluation was addressed to the court in November 2017) and heard testimony related to the evaluation. The presumption that he actually read the evaluation is firmly supported.

¶ 69    Edwin's next argument directed at the February 13, 2019 judgment is that he was prejudiced by the court's "early" entry of judgment. He contends that by entering judgment on

February 13 rather than on February 28, the court deprived him of the opportunity to move to vacate the court's January 24 default order pursuant to section 2-1301(e) of the Code, which only applies "before final order or judgment". 735 ILCS 5/2-1301(e) (West 2016).

¶ 70    The court's February 11 order stated that it would enter judgment on February 28 if the parties could not reach a settlement. Had the court waited until February 28 to enter final judgment, Edwin would have had until that date to file a section 2-1301(e) motion attacking the January 24 order. But he did not file *any* motion until March 8. Edwin admittedly did not learn that the February 13 judgment had been entered until February 28. So even if the court's "early" entry of judgment *technically* deprived Edwin of two weeks during which he could have filed a section 2-1301(e) motion, he cannot now claim any *actual* prejudice resulted from the court entering judgment before February 28.

¶ 71    Edwin next contends that the court did not rely on the appropriate statutory factors in determining how to allocate parental responsibilities. In allocating decision-making responsibilities and parenting time, trial courts must consider "all relevant factors", including several enumerated factors. 750 ILCS 5/602.5 (West 2016) (decision-making); 750 ILCS 5/602.7 (West 2016) (parenting time). We presume that the court knows and follows the law, so "[a]lthough a trial court must consider all relevant factors when determining the best interests of a child, it is not required to make an explicit finding or reference to each factor." *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 43. The record need only reflect that evidence of the factors was considered by the court before making its decisions. *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 424 (1991).

¶ 72    Edwin argues that the record affirmatively shows that the court did not consider the statutory factors. He claims that the court's brief pronouncement from the bench on January 24 clearly does not include any consideration of the factors. We disagree.

¶ 73    The February 13 judgment explicitly states that the court "has considered all relevant statutory criteria, factors and provisions of the Illinois Marriage and Dissolution of Marriage Act". Erika points to portions of her own testimony, the testimony of the GAL, and the evaluation of Dr. Rappaport as evidence relevant to each of the statutory factors. She also points out that the court explicitly stated on January 24, and repeated in the February 13 judgment, that it had considered all the evidence. Moreover, she argues, the court was actively engaged in the trial, interjecting its own questions of Erika and the GAL, showing that the court clearly "considered" the evidence that was being offered.

¶ 74    The record contains ample evidence related to the statutory factors, and Edwin has failed to overcome the presumption that the court considered the evidence. See *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 44 ("the lack of any explicit mention of the factors by the court" is "insufficient to overcome the presumption that the trial court knew and followed the law.").

¶ 75    Next, Edwin contests that the February 13 judgment improperly reserves the issue of parental responsibilities. In a judgment of dissolution of marriage, the issue of parental responsibilities may not be reserved except by agreement of the parties or upon motion by one party, and a finding that appropriate circumstances exist to justify a reservation. 750 ILCS 5/401(b) (West 2016). "Clearly the policy underlying section 401(b) is to encourage the court to decide all matters in the dissolution action in a single judgment, to the extent it is feasible to do so. *** [C]ourts should seek a high degree of finality so that parties can plan their future with certainty and are not encouraged to return repeatedly to the courts." *Britton*, 141 Ill. App. 3d at 591-92. It is

uncontested that the parties did not agree to a reservation of issues, nor did either party move for such a reservation, so if the judgment reserved the issue of parental responsibilities, the judgment was entered improperly. See *Id.* at 591 (reversing, in part, an order of dissolution of marriage because the trial court improperly reserved the division of pension benefits); *Cesaretti*, 203 Ill. App. 3d at 354 (trial court erred by including a temporary custody order in an otherwise final judgment of dissolution of marriage).

¶ 76     Edwin contends that the circuit court partially reserved the issue of his parental responsibilities, namely parenting time. He argues that "parental responsibilities" is a two-part concept, including both "parenting time" and "significant decision-making". See 750 ILCS 5/600(e) (West 2016). And, although the February 13 judgment clearly allocates all decision-making authority to Erika, Edwin contends that the judgment reserves the issue of his parenting time. He points to the circuit court's January 24 statement that Edwin's visitation would remain "suspended", until he began both anger management and therapy. The court then said that the parties could "work with [Edwin]" to set the dates and times for his visitation. The court also set a future court date for "[s]tatus on [Edwin's] therapy progress and parenting time." Edwin contends that this language demonstrates that there was no final resolution of the issue of parenting time.

¶ 77     Erika's response is off the mark. First, she contends that by granting her "all sole decision-making authority", the court granted her all parental responsibilities. Parenting time, she argues, is a separate issue. However, section 600(e) of the Act explicitly states that " 'Parental responsibilities' " means *both* parenting time and significant decision-making responsibilities with respect to a child." (Emphasis added.) 750 ILCS 5/600(e) (West 2016); *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 29. Erika improperly conflates the award of "sole decision-making authority" with the allocation of *all* parental responsibilities.

¶ 78    Edwin contends that there was no final judgment because his parenting time is merely "suspended" for an indefinite period, with a future court date set for "status." As discussed above, such a conclusion would not affect our jurisdiction to review the February 13 judgment, which is final in all other respects and therefore "final and appealable" despite an improper bifurcation. See *Cesaretti*, 203 Ill. App. 3d at 352.

¶ 79    In both *Britton* and *In re Marriage of Burkhart*, 267 Ill. App. 3d 761 (1994), the trial courts explicitly reserved the division of certain marital assets. In *Cesaretti*, the trial court included a temporary custody order within a judgment of dissolution of marriage. In this case, however, Edwin asks us to determine that the circuit court reserved the issue of parenting time without using such explicit language.

¶ 80    We find that the circuit court reserved the issue of Edwin's parenting time. The February 13 judgment does not resolve the question of Edwin's parenting time. It simply "suspends" his parenting time for future determination. The parties agree that this case lacks the requisite conditions for reservation of issues, so the reservation was improper.

¶ 81    Edwin contends that the improper reservation renders the entire judgment void. This is incorrect because the circuit court "had both subject matter and personal jurisdiction over the parties." See *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 531 (2001). The appropriate remedy is to remand the case solely for entry of final judgment on the improperly reserved issue. See *Cesaretti*, 203 Ill. App. 3d at 357 (remanding for allocation of parental responsibilities but affirming the judgment of dissolution of marriage as to all other issues); *Britton*, 141 Ill. App. 3d at 593 (affirming, in part, but remanding for adjudication of improperly reserved issue).

¶ 82    Edwin's final argument directed toward the February 13 judgment is that it does not include a finding of child endangerment. Trial courts may not restrict parenting time, including ordering

25

supervised visitation, without a finding that the parent's "exercise of parenting time would seriously endanger the child's physical, mental, moral, or emotional health." *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 33 (quoting 750 ILCS 5/602.7(b) (West Supp. 2015)). If the court orders such a restriction without a finding of endangerment, the appropriate remedy is for this court to vacate the trial court's order, in so far as it constitutes a restriction, and remand for a determination of whether a finding of endangerment is appropriate. *Id.* ¶ 35.

¶ 83    "The endangerment standard has been described as onerous, stringent, and rigorous." *In re Marriage of L.R.*, 202 Ill. App. 3d 69, 85 (1990). "The courts of this State have been reluctant to deny visitation rights because of the principle that parents have a natural or inherent right of access to their children, and because sound public policy encourages the maintenance of strong family relationships," so restrictions on parenting time should only occur under "extreme circumstances". *Id.*

¶ 84    Edwin points out that the February 13 judgment, by ordering supervised visitation, clearly constitutes a restriction on his parenting time. The judgment does not, however, include any language indicating that the court found by a preponderance of the evidence that parenting time with Edwin would seriously endanger the children. Neither, Edwin argues, did the court's pronouncements from the bench on January 24 include a finding of endangerment. Rather, the court simply recounted that after the November 30 hearing, it had suspended Edwin's parenting time. Indeed, the word "endangerment" only appears once in the entire trial transcript, when the GAL referred to the evaluation of Dr. Rappaport.

¶ 85    Because we remand for additional adjudication of the reserved issue, we need not reach Edwin's arguments that the evidence does not support a finding of endangerment. See *Edwards v.*

*Sterling Drugs, Inc.*, 167 Ill. App. 3d 181, 184 (1988). The court remains free to make such a finding on remand.

¶ 86                                    D. Substitution of Judge

¶ 87     Edwin also requests that we remand the case for reassignment to a different trial judge. He filed three separate petitions for substitution of judge under 735 ILCS 5/2-1001(a)(3) (West 2016). Each of those petitions was denied by a different judge, and none of those denial orders are the subject of this appeal. Rather, Edwin requests that we exercise our authority to remand the case for reassignment to another judge.

¶ 88     A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). "To conclude that a judge is disqualified because of prejudice is not, of course, a judgment to be lightly made." *Id.* (quoting *People v. Vance*, 76 Ill. 2d 171, 179 (1979)). Adverse rulings are generally insufficient to establish judicial bias or partiality, even if the judge's findings and rulings are allegedly erroneous. *Id.* Instead, the party claiming prejudice must present evidence of prejudicial trial conduct and evidence of the judge's personal bias, which can stem from an extrajudicial source. *Id.*

¶ 89     Here, Edwin points to no extrajudicial source of Judge Carr's alleged bias. To the contrary, Edwin points to the entry of the November 30 order and Judge Carr's later decisions not to vacate that order. Even if those decisions were erroneous, "[a] judge's rulings alone almost never constitute a valid basis for a claim of judicial bias or partiality." *Id.* We deny Edwin's request, and remind him that further attempts to substitute judges based on their rulings may subject him to sanctions.

¶ 90                                      E. Appellate Fees

¶ 91   Finally, Edwin contends that the circuit court erred in awarding Erika $2,500 in attorney fees for the defense of appeal no. 1-18-2157. His argument consists almost entirely of an assertion that he would have succeeded had the appeal not been dismissed as untimely. Of course, the appeal *was* dismissed as untimely, rendering his argument toothless. His only citation to authority to support this argument is to *In re Rocca*, 2013 IL App (2d) 121147, an inapposite case in which a former attorney sought contribution from a party after he left the case. Even if the case were applicable, we cannot say that the circuit court abused its discretion in granting attorney fees. Edwin's appeal was dismissed for lack of jurisdiction, and Erika undisputedly incurred fees defending the ultimately unsuccessful appeal. Edwin has forfeited any additional arguments regarding the attorney fees. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 92                              F. Motion to Stay Enforcement

¶ 93   On November 20, 2019, Edwin moved this court to stay enforcement of the February 13 judgment. We denied that motion on November 25. On November 27, Edwin moved for reconsideration of our November 25 order. Because we affirm the judgment with respect to all issues except Edwin's parenting time, we also deny Edwin's motion to reconsider.

¶ 94                                   III. Conclusion

¶ 95   Throughout the litigation in the circuit court and this court, Edwin has filed intemperate documents laden with invective. He caused the circuit court and Erika to needlessly spend time and resources on meritless substitution of judge petitions. He also filed several appeals of orders which were not final and appealable. His decision to intentionally absent himself from the trial arguably justifies forfeiture of virtually all his contentions of error. We have not invoked forfeiture because of the children's best interests are the "lynchpin" of the central issue of this appeal. See *Moseley v. Goldstone*, 89 Ill. App. 3d 360, 369 (1980). But we strongly admonish Edwin to

comport his conduct in the future to the standards of civility required not only of litigants in general, but especially of lawyers.

¶ 96    To preserve the status quo and in the interest of consistency with the circuit court's intent, we order that subsection 9(C) of the February 13 judgment remain in effect as a temporary order of parenting time. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994) (granting this court authority to enter any order "that the case may require"). We dismiss the appeal as to the circuit court's November 30, 2018 and June 27, 2019 orders. We remand this case for further proceedings and entry of final judgment on the issue of Edwin's parenting time and a determination of endangerment if appropriate. In all other respects, we affirm the judgment of the circuit court.

¶ 97    Affirmed in part, dismissed in part, vacated in part, and remanded with instructions.